Hunter, Appellant, *v.* P. S. C.

590

Argued May 5, 1933.

Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*Alexander H. Hunter* of *Hall & Hunter,* for appellant, cited: Baily v. Fayette Gas-Fuel Co., 193 Pa. 175; America Aniline Products Inc. v. Lick Haven, 288 Pa. 420.

*John Fox Weiss,* Counsel, and with him *Samuel Graff Miller,* Legal Assistant, and *E. Everett Mather, Jr.,* Assistant Counsel, for appellee.—Reasonable classification of water company consumers with respect to rates is legal: Alpha Portland Cement Co. et al. v. Public Service Commission, 84 Pa. Superior Ct. 255; American Lime & Stone Co. v. Public Service Commission, 100 Pa. Superior Ct. 158.

*H. E. Carmack,* and with him *H. S. Carmack,* for intervening appellee.

Opinion by Stadtfeld, J., October 2, 1933:

This is an appeal by Laetitia H. Hunter from the order of The Public Service Commission dismissing her complaint of unreasonable, unlawful and unjust discrimination against her, and in favor of other consumers of water, by the Pennsylvania Water Company, in its application of its schedule of rates to the appellant.

The respondent is a Public Service Company engaged in supplying water to the public in, inter alia, the Borough of Wilkinsburg, Allegheny County.

As this case does not involve the reasonableness of rates, but only the application of the classification of the schedule of rates, established by respondent, the order of the commission is prima facie evidence of the fact found (Act of June 12, 1931, P. L. 530). Quoting from the report of the commission: "Complainant is the owner of a three-story building situate at the corner of Penn Avenue and Wood Street in the Borough of Wilkinsburg, Allegheny County, known as the Hunter Building. It is leased for office, business and apartment purposes. On the first floor there is a real estate and trust company, a dry goods store and a building and loan association; on the second floor there are offices and four apartments and on the third floor five apartments. In this building there are at least thirteen consumer units, all served with water by the Pennsylvania Water Company, respondent, through one service line and meter.

"Adjoining the Hunter Building on Penn Avenue there is a one and a half story building occupied by an undertaking establishment; this building is likewise served by respondent through a service line and meter. Adjoining the Hunter Building on Wood Street is a one-story building now used for restau-

rant purposes, also served by a single service line and meter. And next to the restaurant building on Wood Street is a two-story building known as the Cornwall Building, with ten store rooms on the first floor and ten apartments on the second floor. Here again is a single service line and meter. Of the ten store rooms in this building, one adjoining the restaurant building is used by the restaurant proprietor in connection with his business; the other nine are occupied by nine independent and separate business firms. The record indicates that in this building the consumption exceeds 10,000 cubic feet per month, while in the others it does not. These several buildings were erected at different times.

"It thus appears that there are thirty-four consumer units who occupy the several buildings on the entire plot, and who are furnished with water service by respondent through four service lines on each of which there is a single meter."

Respondent's tariff provides for two classes of private consumers: (1) Domestic, (2) Commercial—Industrial. For a single domestic consumer there is a minimum charge of six dollars for six months, entitling the consumer to 2,500 cubic feet (about 19,750 gallons) and all water used in excess of that amount is at the rate of 24 cents per 100 cubic foot. Under the Commercial-Industrial class the rates are on a semi-annual basis as under the domestic, or on a monthly basis. The Commercial-Industrial class includes consumers using water at a greater rate than 10,000 cubic feet per month, with a steadily decreasing rate as the amount of water used increases.

Complainant seeks to compel the Pennsylvania Water Company, respondent, to furnish service, for all purposes to all of the buildings on complainant's land, through one service connection and one meter at the Commercial-Industrial rates, instead of four service lines and meters at the domestic rates, because of

the fact that the buildings are contiguous and held in one ownership, and that complainant admittedly consumes in excess of 10,000 cubic feet of water per month. The sole question involved is whether complainant comes under the classification of "Commercial-Industrial" under respondent's schedule of rates.

The Public Service Company Law, (Act of July 26, 1913, P. L. 1374) provides in Section 1 of Article III, that it shall be lawful for every public service company: "(b) To employ, in the conduct and management of its business, suitable and reasonable classifications of its service, patrons, and rates; and such classification may, in any proper case, take into account the nature of, the use, and quantity used, the times when used, the purpose for which used, the kind, bulk, value, and facility of handling of commodities, and any other reasonable consideration.

"(c) To have reasonable rules and regulations, subject to existing law and the provisions of this act, governing the conduct of its business and the conditions under which it shall be required to render service.

"It may require the payment of charges in advance, the making of reasonable minimum payments and deposits to secure future payments of such charges; or it may allow discounts for prompt payments of the same, or impose penalties for failure to pay promptly: Provided, That such advance charges, minimum payments, deposits, discounts, or penalties are reasonable and apply equally and without discrimination or preference to all shippers, consumers, and patrons, under like conditions and under similar circumstances."

Appellant relies upon Section 8 of the Public Service Law, which provides: "It shall be unlawful for any public service company—(a) to charge, demand, collect, or receive, directly or indirectly, by any special rate, rebate, drawback, abatement, or other device

whatsoever, from any person or corporation for any service rendered or to be rendered, a greater or less compensation or sum than it shall demand, charge, collect or receive from any other person or corporation for a like and contemporaneous service under substantially similar circumstances and conditions. (b) To make or give any undue or unreasonable preference or advantage in favor of or to any person or corporation or any locality, or any particular kind or description of traffic or service, in any respect whatsoever; or to subject any particular person or corporation or locality, or any particular kind or description of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Appellant contends that the only classification in the water company's schedule of rates is based on the quantity of water used.

Water company's rule 13 provides: "Service lines shall be used to supply single building only, unless otherwise approved by the company, etc." Rule 31 provides for a minimum charge for a single building, and that where a building is capable of subdivision and is used by more than one family or occupant, the minimum charge should apply to each subdivision, family or occupant.

The water company claims that under its rules, it is entitled to consider each building as a separate consumer.

This court has interpreted the two cited sections in Alpha Portland Cement Company et al. v. Public Service Commission, 84 Pa. Superior Ct. 255, in an opinion by GAWTHROP, J., and held that a public service corporation may classify its patrons under proper conditions and that the principles of classification in the conduct of business is as old as trade itself and familiar to every one engaged in any branch of commerce. On pages 271 and 272, the court stated: "So that even prior to the enactment of The Public

Service Company Law, both of the appellate courts of this State recognized the right of a public service company to charge different rates for its service rendered under different conditions, and held that the difference in rates is not unlawful as applied to different classes of patrons where the business interests of the company are responsible for the establishment of different rates, and where the lower rate to one patron does not injuriously affect the other patron in the conduct of his business. The decisions of our own courts are in harmony with what had been decided by the Supreme Court of the United States in construing the Interstate Commerce Act. (See Cincinnati, etc. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184.) The Public Service Company Law removes all doubt which might have existed under the decisions in this Commonwealth as to the considerations which may govern the utility in classifying its service, patrons and rates. The act expressly authorizes the classifications of patrons and rates, as well as service, and in making such classification, the taking into account of 'any other reasonable consideration.' The determination of what is and what is not reasonable is left primarily with the utilities in the exercise of their power 'generally to manage their important interests upon the same principles which are regarded as sound, and adopted in other trades and pursuits': Cincinnati, etc. Ry. Co. v. Interstate Commerce Commission, cited.''

Speaking of Section 8 of Article III of the act, the court stated at page 272: ''It contains no requirement that rates for different classes of service be either uniform or equal, or even equally profitable to the utility. The requirement is merely that rates for one class of service shall not be unreasonably prejudicial and disadvantageous to a patron in any other class of service. Before a rate can be declared unduly preferential and therefore unlawful, it is essential that

there be not only an advantage to one, but a resulting injury to another. Such an injury may arise from collecting from one more than a reasonable rate to him in order to make up for inadequate rates charged to another, or because of a lower rate to one of two patrons who are competitors in business. There must be an advantage, to one at the expense of the other.''

In American Lime and Stone Co. v. Public Service Commission, 100 Pa. Superior Ct. 158, 161, 162, a case involving railroad rates, it was held that: "Even though appellants suffer some disadvantage from this condition, it does not follow that there is an unlawful discrimination against them. The law does not prohibit all discrimination in charges, but only discrimination which is undue and unreasonable. The charging of different rates for service rendered upon different conditions and under different circumstances is not unlawful: Alpha Portland Cement Co. v. P. S. C., 84 Pa. Superior Ct. 255. This well established principle has been adhered to by the Supreme Court of the United States in considering questions involving prejudice or discrimination arising under the Interstate Commerce Act. 'Every rate which gives preference or advantage to certain persons, commodities, localities or traffic is discrimination; for such preference prevents absolute equality of treatment among all shippers or travellers, but discrimination is not necessarily unlawful. The Act to Regulate Commerce prohibits only that discrimination which is unreasonable or unjust . . . . . . whether a preference or discrimination is undue, unreasonable or unjust is ordinarily left to the commission for decision; and the determination is made, as a question of fact, on the matters proved in the particular case': Nashville C. & St. L. Ry. v. State of Tennessee, 262 U. S. 318. See, also, United States v. Illinois Central R. R., 263 U. S. 515.''

The sole question in this case is whether appellant has the status of a commercial-industrial consumer

by virtue of the ownership of four adjoining properties which together use an amount of water entitling an industrial consumer to a quantity rate. Appellant has leased the four properties for four different business enterprises. One property is rented as apartments, another as a restaurant with apartments above it, another as a store and apartment building, and the fourth as an undertaking establishment which receives and pays a separate water bill.

Appellant urges that an owner of adjoining properties is a single consumer, without regard to the use made of the properties, their number, or the leasehold interests which exist therein. This cannot be true in respect to tariff rules as it would necessarily result in constant change and fluctuation dependent on the change of ownership of portions of the properties.

There are many reasons which enter into consideration in making classifications for rates other than the amount of water consumed. One self-evident purpose of the "Commercial-Industrial" classification is to encourage the location of large industrial and commercial plants in the territory of the water company, thereby lightening the rate burden of all of its consumers. The classification plainly contemplates a supply to one business unit, operated for one purpose, although the plant may include several different buildings.

We do not think that the mere fact that the contract for supply is made with the individual who owns all of the properties, is controlling of the situation in view of all the other circumstances connected with the use of the properties.

The contention of appellant, if upheld, would result in unjust and unfair discrimination. If complainant's leases to her tenants provide that the tenants pay the water rent, the occupants of her offices, storerooms and apartments would receive water at a lower rate than those of other storerooms, offices and apartments.

To make the volume of water delivered at the curb the test, would necessarily result in unjust discrimination.

As stated in the report of the commission: "Neither the fact that there are several buildings on the plot receiving separate services, nor the fact that the sole owner of these buildings would be the contracting party for water service rendered thereto, are the factors upon which to determine this complainant's grievance. The real point at issue is whether the complainant is a single Commercial-Industrial consumer receiving water for the purposes of one business unit, or whether the thirty-four tenants are each essentially separate domestic and/or commercial consumers. Under the evidence the conclusion is inescapable that the latter is the fact."

This court has held in Alpha Portland Cement Co. et al. v. Public Service Commission, supra, at page 272, that "the action of the utility is subject to the supervision of the Public Service Commission, the question before the commission in such a case being largely of an administrative character, which the commission is peculiarly qualified to decide."

The commission has found that the method of service and charges is in accordance with respondent's tariff and is not unreasonable.

After a careful review of the evidence, and giving due weight to the report and order of the commission, we cannot say, as a matter of law, that the latter erred in sustaining the classification of rates or the application of the same by respondent to the properties of appellant.

The assignments of error are overruled and the order of the commission is affirmed and the appeal is dismissed at the cost of appellant.