Viscose Company, Appellant, *v.* Public Service Commission et al.

Argued March 13, 1936.

Before KELLER, P. J., BALDRIGE, PARKER, JAMES and RHODES, JJ.

*J. H. Ward Hinkson,* for appellant.

*Samuel Graff Miller,* with him *Harry H. Frank, John C. Kelley, Jr.,* and *Richard J. Beamish,* for appellee.

*Berne H. Evans,* of *Hause, Evans, Storey & Lick,* for intervening appellee.

OPINION BY KELLER, P. J., September 30, 1936:

This appeal brings before us another phase of the controversy between the Viscose Company and the

Lewistown-Reedsville Water Company. When last here *(Lewistown-Reedsville Water Co. v. P. S. C.,* 111 Pa. Superior Ct. 24, 169 A. 406) we sustained the Public Service Commission in its construction and interpretation of Rule 8 of the Water Company. The present appeal by Viscose Company is from the order of the Commission deciding that an amendment of that rule which nearly quintuples the bills for water furnished to the industrial housing section of Viscose Company's plant is just and reasonable as respects the Viscose Company. To understand the issues involved we shall have to go somewhat fully into the facts as presented in this and prior cases involving the Water Company's rule and rates.

In 1921 Viscose Company erected a large rayon manufacturing plant in Granville Township, just outside of Lewistown. Three years later, in 1924, it laid out on its land in Granville Township an industrial housing group as auxiliary to and reasonably necessary for its manufacturing plant, [1] consisting of 250 dwelling houses, two stores, eleven fire hydrants and a sewage disposal plant. Before doing so it made inquiries of the intervening appellee, hereinafter referred to as the "Water Company", as to the arrangements which could be made for supplying this industrial development with water. The water company presented three proposals, none of which provided for the extension of its facilities to the proposed development at its (the water company's) own cost and expense. The water company was not willing to extend its mains, install pump and stand pipe then necessary, lay service lines and install meters at its own immediate ex-

---

[1] The Commission in its report when the matter was last here (111 Pa. Superior Ct. 24) found that "this community was developed by the Viscose Company solely for its convenience in having an immediate supply of labor close at hand for work in its plant."

pense. The most that it proposed along that line was for the Viscose Company, at its expense, to construct the Water Company's distribution system on plans and specifications furnished by the latter, and look for reimbursement to a partial credit on the water bill. Another plan proposed by Water Company was for Viscose Company to *build, own* and *maintain* its own distribution system to this industrial housing section of its plant. As to the rates for water furnished the Viscose Company was referred to the Water Company's schedule of rates and rule 8, effective April 1, 1922. [2]

Viscose Company adopted the proposal that it construct its own distribution system—one of the three submitted by Water Company—and did so at a cost of over $24,000. As the entire cost of supplying the

[2] "The material portions involved are as follows:

Meter Rates

The charge for water served by meter shall be according to the following 'readiness-to-serve' and 'out-put' charges:

'Readiness-to-serve' charge (includes no water)

| Size of meter | Monthly charge |
|---|---|
| ½ in. or ⅝ in. meter | $ .50 |
| 4 in. meter | 12.00 |

'Out-put' charge (in addition to 'readiness-to-serve' charge)

| | Per 1000 gallons |
|---|---|
| For the first 5,000 gal. per month | $.30 |
| For the next 45,000 gal. per month | .20 |
| For the next 600,000 gal. per month | .07 |
| For all over 650,000 gal. per month | .04 |

......Rule 8. No more than one single building and no more than one single family or establishment shall be supplied by a single service line, except as approved or ordered by the Company.

Where two or more buildings, already constructed and now supplied, or two or more families or establishments are supplied by a single service line, with the approval of the Company, and where the application for furnishing water service is signed by the owner of all the buildings or of the buildings so supplied, a single meter may be installed, and the contract for furnishing water shall in such cases be made by the owner; an additional service charge equal to two-thirds of full charge will be made for each such family or establishment."

water was to be borne by the employer,[3] it did not run separate service lines into each house and installed no separate meters, nor did it lay separate lines or mains for the fire hydrants and sewage disposal plant. It treated the development or industrial housing section of its plant as a unit. Had it done otherwise, the cost would have been higher. The Water Company extended its eight-inch main to Viscose Company's housing section land—a very short distance—and installed a battery of two four-inch meters [4] outside the borough limits [5], and was put, and has since been put, to no additional expense by way of building, operating, maintaining or repairing the distribution line built and maintained by Viscose Company. The latter must not only keep the line in repair but also pay for all water lost by way of breaks, leakage, etc. in the distribution line.

It is readily seen that this was not the ordinary case of two or three separate, but adjacent, individual domestic consumers being supplied, with the approval of the water company, with water from the latter's distribution main through one meter. It was a different and wholly unique proposition and put the dwellings included in this industrial housing group in a different class from the ordinary residence supplied on a separate or two or three party service line laid and maintained by the Water Company. Counsel for the

[3] See Report of Commission in prior hearing and finding of this Court on page 28 of 111 Pa. Superior Ct. Nothing in the testimony contained in the record in the present case justifies any departure from our statement in that opinion, "No meters are installed in any of the houses or consumption units; and no charge is made by Viscose Company to its employees for the water used by them, or furnished for their benefit by way of fire protection or sewage disposal. The entire cost of the water supplied is borne by the employer, the Viscose Company."

[4] The ready to serve charge for these meters is $24 a *month* or $288 a year.

[5] The Commission erroneously stated that the meters were installed inside the limits of Lewistown Borough.

Commission in his brief in the last appeal pointed this out, arguing that the facts in the case were such as to *"put these residences definitely in a different class from others served."*

It is to be borne in mind that the supply of all the water consumed in this entire industrial housing section of the Viscose Company's plant, through one private distribution main and a battery of two meters, could not have been compelled by the Viscose Company. It was necessarily subject to the Water Company's approval, which it gave in the most emphatic way possible—it made the connection to the plant after the distribution system inside the village was completed and with full knowledge of its manner of construction, and commenced furnishing water in December, 1924. Had it been willing itself to pay the cost of constructing the system it might have insisted on a separation of water for fire protection and sewage disposal from individual consumers and a separate meter for each dwelling house. But it did not. It approved the adoption by the Viscose Company of one of its own proposals. At no cost to the Water Company by way of distribution after the water left the meters, with no expense by way of maintenance, repairs, leakage, etc. and no charges for reading individual meters, keeping individual accounts and billing individual customers, it had for all the water passing through the meters for all purposes—fire protection, sewage disposal and dwelling house consumption—only one customer, to whom it sent one bill and from whom it was certain of collecting, without delay, for all the water consumed.

When the Water Company came to sending out bills for the water thus consumed at the industrial housing section of appellant's plant it adopted a method not justified by the plain language of its schedule and rules. Besides the additional monthly readiness to

serve charge of two-thirds of the full charge, (50 cents), for each family or establishment, which was provided for in rule 8, it attempted to average the total consumption of water at the industrial housing section among the 250 dwelling houses, as if each householder were its separate customer, and used 1/250 of all the water passing through the meters, instead of treating the Viscose Company as one consumer and applying to it the out-put charge in accordance with its tariff. In this way the Viscose Company, though using approximately 1,600,000 gallons of water per month at its industrial housing section, got no benefit of the lower out-put rates for quantities used in excess of 50,000 gallons a month, and would have to use 12,500,000 gallons a month before it would receive any benefit from the seven cent and four cent rates. Viscose Company, at once, protested against this method of billing and persistently objected to it as not being warranted by the tariff schedule and rules of the water company and, not having received any satisfaction from the water company, finally complained to the Public Service Commission as above (111 Pa. Superior Ct. 24) which, after hearing, sustained its complaint, as respects the calculation of the out-put charges, holding that they were not justified by any fair or reasonable interpretation of rule 8. The Commission also found that the rule as construed and interpreted by the complainant (Viscose Company) was just and reasonable and in conformity with law. [6]

---

[6] The water company was, in substance, ordered to "Bill (1) the initial service charge of $24.00 based on the two 4-inch meters; (2) an additional service charge equal to two-thirds of full service charge for each family or establishment actually receiving service ...... which will be two-thirds of the 50 cent tariff service charge for 'Readiness to serve' charges involving dwellings and establishments using water service under this tariff schedule; and (3) an 'out-put charge' computed by applying each block of the 'out-put charge' schedule at the prescribed out-put

Counsel for the Public Service Commission and for
the water company now contend that this finding was.
wholly gratuitous and without binding effect, because
it had been stipulated by all parties that the reason-
ableness of the *rates* was not involved. We do not
agree with this contention. While the Viscose Com-
pany's complaint did not attack the reasonableness
of the *rates* involved, if its construction of the water
company's schedule and rules were not adopted, it
rested its case on the validity of the rule as interpreted
by it, pursuant to which it had expended a large sum
of money in the construction and maintenance of its
distribution system; and the question as to whether
the *rule* was just, reasonable and in conformity with
law necessarily came before the Commission. No mat-
ter what the rule provided for, or what the Commis-
sion's interpretation of the rule may have been, if it

---

rate once only for the monthly total meter readings involved".
In its report the Commission said, inter alia, "In reference to
the 'out-put charge' neither the contract, the schedule for 'out-
put charge', nor Rule No. 8, the only one applicable to the ques-
tion at issue, make any provision for any addition to or modifi-
cation of this schedule. If it had been the intent to modify or
change the 'out-put charge', specific provision for change or
modification should have been stated in either the contract, the
rate schedule or the service rules, as was done specifically in the
case of the 'Readiness to serve charge'. We find no principle of
law which prohibits such a tariff and such contracts. The out-
put rate schedule stands unmodified both as to blocks and rates.
Hence it is legally appropriate and mandatory to apply this
'out-put charge' schedule, as stated in the tariff, for the water
delivered through the complainant [Viscose Company] to this
group served under contract. Incidentally this interpretation is
reasonable, since the respondent [Water Company] did not make
any investment beyond the 4-inch meters in the distribution
system, which cost the complainant $24,000, nor does it pay
any of the operating or maintenance costs of this distribution
system, thus obtaining a large volume of additional business
and increased revenues without having to assume any of the costs
of construction and operation."

had found that the rule as drawn and interpreted by Viscose Company was unjust, unreasonable and not in conformity with law it would have been its duty to set it aside. One of the fundamental reasons for the establishment of the Public Service Commission is to pass on the reasonableness and legality of the rules, practices, etc. of public service companies, and where a complaint brings such a rule or practice to the attention of the Commission its reasonableness and conformity with law are necessarily involved. Hence we have a proper and definite finding by the Commission on the last appeal that the rule of the water company, pursuant to which the Viscose Company, with the approval of the Water Company, constructed the distribution system for the industrial housing section of its plant was, in the circumstances, reasonable and in conformity with law. On appeal to this Court, the order of the Commission was sustained; and it is proper to note that the Water Company's assignments of error (Assignments 1 and 3) brought to the direct attention of this court the portions of the report and order of the Commission embraced in note six, supra.

The statement or finding in the Commission's present report that the original charges of the water company were computed, billed and paid on the basis of the previously stated water company's intent and practice and the mutual interpretation of Rule 8, is without foundation of fact in the record and is in the teeth of the record evidence on the last appeal, which was offered in evidence in the present hearing, and constitutes error of fact; Viscose Company having, at the very outset, protested against the Water Company's method of computing and billing for the water used at its industrial housing section and having persistently, from time to time, renewed its objections cannot be held to have acquiesced in the Water Company's computation and billing because it

did not, for some time thereafter file its formal complaint with the Commission. The point was raised, considered and decided on the former proceeding and appeal. And it was error of law for the Commission to fail or refuse to give due effect, in the light of the present record, to its decision on the former appeal, that Rule 8 of the Water Company, as construed by it according to its plain language and in consonance with the contention of the Viscose Company, was reasonable and in conformity with law.

While the former hearing was in progress before the Commission, the Water Company filed an amendment to Rule 8 intended to make it conform to its prior erroneous interpretation of the rule. The second paragraph of the rule was changed so as to read (the new material part being italicized): "Under such circumstances one such family or establishment, the largest consumer unit, shall be subject to the normal service charge, and for each other such family or establishment the service charge shall be two-thirds as much as the normal service charge (normal meaning the service charge which would be applicable if such family or establishment were served by a separate service line and meter), *and the out-put charge will be applied to the average use of each such building, family or establishment so supplied*". From the order of the Commission holding that this amendment was just and reasonable and should be applied to the Viscose Company's industrial housing section, the Viscose Company, complainant, appealed to this Court.

The evidence produced at the hearing to bring about a review and reversal of the Commission's former ruling fell far short of being sufficient for the purpose.

(1)  The Water Company contended that it had been compelled to spend $115,000 in order to furnish the Viscose Company's industrial housing plant with water. The claim has no sufficient basis in fact. Be-

yond extending its 8-inch main a short distance and installing two 4-inch meters it spent no money because of, or in order to furnish water to, the appellant's industrial housing section. It may have been put to some expense,—not, however, anyways nearly approximating $115,000—in enlarging its capacity and improving its facilities in order to furnish an adequate supply of water in 1921 to the *manufacturing plant* of Viscose Company, which, however, was entitled, beyond question, to the low rates fixed in Water Company's schedule for a consumption greater than 50,000 gallons a month; and which is only what Viscose Company asks for its industrial housing section; but the main items of cost which Water Company contemplated expending for assuring an adequate supply of water to Viscose Company's manufacturing plant, viz., the laying of a 10-inch main to the plant in place of the 8-inch main already there and the erection of an impounding dam and reservoir on Minehart Run, were abandoned because of the unwillingness of the *Viscose Company* to comply with Water Company's demand that it (Viscose Company) should *finance the cost,* and the Viscose Company thereupon arranged to take a considerable part of its water supply for its manufacturing plant from the Juniata River, and on notice to the Water Company to that effect, the latter wrote appellant on May 23, 1922, two years before the housing section was built, inter alia, as follows: "It is understood......that as you will take care of all your factory needs, including the amount now being furnished by the Water Company, it will therefore not be required for the Water Company to install the additional facilities which it had contemplated to bring water from the northern sources through Lewistown to your plant. Therefore, the Water Company will be unable to guarantee, during the next immediate dry season, a *daily supply greater than 500,000 gallons per day,* because it

will not be desirable to install these facilities, if the Viscose Company is not going to continue to use them in the future......Although, if the season should be a wet one, we shall be glad to supply as much more than the 500,000 gallons per day as the streams and present facilities will yield. In regard to the supply for the housing development, we understand that you will furnish us with a plan of this layout at the earliest possible date, and we will then discuss under what arrangements, guarantee and plan of procedure the additional work will be undertaken."

The facts show that the present management of the Water Company took control on or before 1920 and on May 29, 1920, filed a new schedule, effective July 1, 1920, which materially raised the rates theretofore charged. Complaints against the reasonableness of these rates were filed prior to the effective date. The Commission's report and order fixing the fair value of the Company's property, used and useful in the public service, at one million dollars, on which it allowed a return of seven per cent, in addition to annual depreciation of $7500 ($\frac{3}{4}$ of 1% a year), operating expenses of $19,500 and gross annual revenue of $97,000, was affirmed by this court. See *Lewistown Borough v. P. S. C.,* 80 Pa. Superior Ct. 528. The domestic consumers were then practically all supplied on the basis of a flat rate, and part of the plan of the new management was to change from a flat rate to a meter basis, as the former was found to be wasteful, extravagant and not properly remunerative to the Company. The attempt to saddle on the Viscose Company, which did not build its plant nor use any water until after the new schedule of rates was filed, the bulk of the expense of installing necessary improvements to the facilities in order to satisfy the complaints made by existing consumers,[7] and the cost

---

[7] The itemized statement of the water company made to the

of installing 4000 meters to change the system from a flat rate to a meter basis, is without any reasonable basis of support. Much less to fasten it on the industrial housing section of Viscose Company's plant, which was not even in contemplation when the water company filed its new rates pursuant to the plan of its new management. The evidence does not refute the former finding by the Commission that the supply of water to the industrial housing section was without expense to the Water Company other than extending its 8-inch main a short distance and installing two 4-inch meters. There is no justification for charging against this industrial housing section the general expenses incurred by the Water Company in improving its distribution system and increasing its capacity for the benefit of the general public served, or even for the *manufacturing plant* of the Viscose Company.

(2)   The calculations made by the Water Company as to the comparative cost of water furnished to the Viscose Company's industrial housing plant and individual consumers outside of Lewistown Borough are unfair and misleading. The average monthly consumption at the industrial housing plant for all purposes, dwelling houses, stores, fire protection, sewage disposal and leakage is about 1,600,000 gallons per month— which divided by 250, is slightly over 6,000 gallons a month. On a consumption of 6,000 gallons by the individual consumer outside of Lewistown, it is stated that he would have to pay $2.37 per month, ($2.20 for

Commission pursuant to its order (80 Pa. Superior Ct. pp. 529, 530) filed June 5, 1923 shows that the bulk of the expenditures made to that time, $72,119.39, were "for the purpose of improving the properties and avoiding the recurrence of conditions which existed in the year 1921 when a number of the Company's consumers were without water for various intervals." The report or statement also set forth the contemplated expenditure of $56,000 for 4000 meters at $14 and $5000 for 1000 curb boxes at $5.

one on a joint line), while at the new rates of the Water Company the Viscose Company would have to pay $2.13 per house, and at the old rates, only 78¢ per house. But the ordinary consumer does not use anything like 6,000 gallons of water a month. The average domestic consumption, the Water Company's superintendent testified, is 2,500 gallons a month. On this basis the individual consumer would pay $1.42 a month and the consumer on a joint line $1.25 per month, while the Viscose Company would pay under the new rates $1.18 per month for each house and under the old rates 63¢ per month. But if interest is counted on the money spent on the distribution system, and allowance is made for annual depreciation at the rate of ¾ of 1%,[8] 54¢ must be added to this making $1.72 and $1.17 respectively as the actual cost of supplying water to each of the 250 houses in the industrial housing section, on the basis of 2,500 gallons per month each. But all this overlooks the fact that the water consumed at the industrial housing section of the Viscose Company's plant is not for domestic purposes only—that unlike the ordinary domestic consumer with whom it is compared it covers fire protection and sewage disposal; and that, as respects the industrial housing section, the Water Company has no expenses to pay by way of repair to distribution mains or service lines—no expenses of operation—no reading of individual meters—no individual billing or collect-

---

[8] In its Exhibit No. 2, the Water Company shows that from 1920 to 1933, the fair value of its plant has increased from $1,000,-000 to $1,257,000—that operating expenses in the same period have increased from $19,500 to $42,500; and the annual depreciation allowance has increased from $7,500 (¾ of 1%) to $19,-200. That is, while the value of the plant has increased roughly 25%, the operating expenses have increased 118% and the annual depreciation over 150%. This, in an effort to show that its earnings are not as much as the order of the Commission in 80 Pa. Superior Ct. 528 entitled it to earn.

ing. These facts considered in connection with the expense incurred by Viscose Company in installing and maintaining the plant put the operation in a class by itself and justify the maintenance of the rule in force when the plant was built. If the seven cent and four cent rates in the higher consumption blocks are not remunerative to this operation, then they are not remunerative to any operation, and should be changed to all; but if they are remunerative to any other operation, they are remunerative here.

Finally the new rule, as sought to be *applied* to this industrial housing plant, is on its face unfair and unreasonable because it seeks to allocate to each dwelling unit, as part of its *domestic* use, a proportionate part of the water used for fire protection and sewage disposal, which is not a domestic use but wholesale consumption. The new rule reads: "and the out-put charge will be applied to the average use of each such *building, family or establishment* so supplied." Water supplied for sewage disposal and fire protection purposes is not a part of the average use of "each such building, family or establishment", and cannot be included in the calculation of water to be divided among the buildings, families and establishments in order to determine the average use of each. That the Water Company may have no practicable means of determining how much water is used for sewage disposal and fire protection apart from the use for buildings, families and establishments does not justify the inclusion of the former in the average use of the latter under the rule. It only confirms the contention of the counsel for the Commission on the last appeal that the industrial housing section of Viscose Company's plant is not a mere collocation of individual dwellings but is in a different class from the usual residential consumer and entitled to be treated as one consumer of water as respects the combined uses in the industrial housing section.

As we said in our opinion in the last appeal, the case of *Hunter v. P. S. C.*, 110 Pa. Superior Ct. 589, 168 A. 541, has no applicability. There the appellant sought to compel the Company to approve a joint line for four or five buildings separately metered. We may admit that Viscose Company could not have required Water Company to do what it did. Water Company might have refused its approval and insisted on building its distribution system at its own cost and laying a separate service line to each consumer, but it did not do so. It did not want to assume the cost, and instead, offered as a proposal the plan which Viscose Company adopted. It cannot now, without reasonable reimbursement to the latter, fairly and equitably change the existing status and apply the amendment to Rule 8, in the manner attempted, to the water consumed at Viscose Company's industrial housing section of its plant, so as to divide all the water used for all purposes in the section by 250, and bill the result as "the average use of each such building, family or establishment". In the existing circumstances, as above described, Viscose Company is entitled to the recognition of its claim that the industrial housing section of its plant shall be regarded and billed as one consumer.

The first, second, third and fourth assignments of error are sustained. The order of the Commission is reversed and the amendment to the appellee's Rule 8 is held to be, in the circumstances here present, inapplicable and unreasonable as respects the industrial housing section of Viscose Company's plant.

Judge CUNNINGHAM took no part in the consideration or decision of this case.