## Carpenter, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 18, 1940.

Be-
fore Keller, P. J., Cunningham, Baldrige, Stadtfeld,
Parker, Rhodes and Hirt, JJ.

*John M. Walker,* with him *Walter J. McClintock,* for
appellant.

*Samuel Graff Miller,* with him *Harry M. Showalter,*
for appellee.

*C. O. Tayntor,* with him *Charles H. English,* of *Eng-
lish, Quinn, Leemhuis & Tayntor,* for intervenor.

Opinion by Cunningham, J., October 2, 1940:

Harley D. Carpenter, appellant herein, is engaged in

the business of distributing electric current, for light, heat and power, to the public in a number of townships and boroughs in Crawford County, through eleven small companies owned or controlled by him. He purchases the current from Pennsylvania Electric Company under a contract based upon "Rate I" of that company's filed tariff, Electric, Pa., P. U. C. No. 34.

In September, 1938, Carpenter filed a complaint with the Pennsylvania Public Utility Commission charging that the Pennsylvania Electric Company is unlawfully discriminating against him and granting an unreasonable preference to the Northwestern Rural Electric Cooperative Association of Saegerstown in that, under Supplement No. 5 to its tariff, Pa. P. U. C. No. 36, it is selling current to the latter at a rate about 33-1/3% lower than the rate charged appellant, although he is buying more current each month than the cooperative association.

The Pennsylvania Electric Company replied that its refusal to apply its Supplement No. 5 rate to the service rendered appellant is due to the difference in service conditions, points of delivery and apparatus furnished, and averred that no unlawful discrimination existed. After the taking of evidence at several hearings the commission made an order dismissing the complaint and this appeal followed. The principles of law by which we are to be guided in disposing of it have been definitely established.

Section 304 of Article III of the Public Utility Law of May 28, 1937, P. L. 1053, (66 PS §1144) provides in part: "No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreason-

able difference as to rates, either as between localities or as between classes of service."

A similar provision forbidding discrimination was contained in the prior Act of July 26, 1913, P. L. 1374, Article III, Section 8, (66 PS §262).

Both at common law and under our statutes, the discrimination forbidden is one that is unreasonable and without factual basis: *Alpha Portland Cement Co. v. P. S. C.,* 84 Pa. Superior Ct. 255, 270. In that case GAWTHROP, J., speaking of similar provisions in prior statutes, said at page 272: "[The Act] contains no requirement that rates for different classes of service be either uniform or equal, or even equally profitable to the utility. The requirement is merely that rates for one class of service shall not be unreasonably prejudicial and disadvantageous to a patron in any other class of service. Before a rate can be declared unduly preferential and therefore unlawful, it is essential that there be not only an advantage to one, but a resulting injury to another. Such an injury may arise from collecting from one more than a reasonable rate to him in order to make up for inadequate rates charged to another, or because of a lower rate to one of two patrons who are competitors in business. There must be an advantage to one at the expense of the other." See to the same effect: *American Lime & Stone Co. v. P. S. C.,* 100 Pa. Superior Ct. 158, 161; *Hunter v. P. S. C.,* 110 Pa. Superior Ct. 589, 595, 596, 168 A. 541; *Reading Coach Co. v. P. S. C.,* 125 Pa. Superior Ct. 493, 497, 190 A. 172; *Penna. R. R. Co. v. P. U. C.,* 135 Pa. Superior Ct. 5, 18, 4 A. 2d 622.

As it is conceded the rate charged the cooperative association under Supplement 5 to tariff No. 36 is approximately one third less than the rate charged appellant under "Rate I" of tariff No. 34, it is unnecessary to enter into a technical description of the differences in the two rates. Each has a demand charge,

per month, per k. w. and a graduated energy charge, per k. w. h.

The respondent company has provided in its tariffs that "Rate I" is "available throughout its territory for power and incidental lighting for loads of not less than 25 k. w. at 2200 volts or over." Supplement No. 5 to tariff No. 36 was evidently designed for a special class of purchasers, viz., "rural electric cooperative associations." The following excerpts from the supplement indicate the extent and character of the service to which it is intended to apply:

"*Service to:* The Northwestern Rural Electric Cooperative Association; The Central Rural Electric Cooperative Association; Southwest-Central Rural Electric Cooperative Association.

"*Character of Service:* Alternating current, 60 cycle, voltage and phase to be those available on the company's existing system at the point of connection. The company shall not be required to deliver service at less than 2300 volts or more than 33,000 volts nominal line voltage."

A further limitation of the service reads:

"*Availability:* Available for service to rural cooperative non-profit associations, when taking their entire requirements from the company. This service classification shall apply separately to each point of delivery."

The Northwestern Rural Electric Cooperative Association is a non-profit association organized under the Act of June 7, 1887, P. L. 365, (14 PS §1) supplemented as to electric cooperative associations by the Electric Cooperative Corporation Act of June 21, 1937, P. L. 1969, (14 PS §251). It is a part of the Federal Rural Electrification Administration set up by Congress through the Rural Electrification Act of 1936, May 20, 1936, c. 432, Sec. 1, 49 Stat. 1363, (7 U. S. C. A. 901).

Briefly stated, appellant's contention is that the respondent electric company is legally bound to furnish

him the service he is now taking at the same rates it is charging the cooperative association.

In rejecting this contention and holding, as a matter of law, that the refusal of the respondent company to apply the rates specified in its Supplement No. 5 to the energy sold by it to appellant does not constitute an unreasonable preference to the cooperative association nor subject appellant to an unreasonable prejudice or disadvantage, the commission made these findings:

"The conclusion is inescapable that the character of service rendered the complainant at the five points of delivery and the class of consumers served by him through his wholly owned eleven electric utilities are dissimilar to the character of service and class of consumers of the cooperative association—first, upon the class and type of consumers served; second, with respect to the requirement of the cooperative's providing its own transforming and appurtenant equipment; and third, with respect to the question of minimum and maximum demand imposed upon respondent's system."

Under these findings our review is limited to a determination of whether or not there is in the record competent and substantial evidence to support the commission's findings: *Alpha Portland Cement Co. v. P. S. C.*, supra, at page 272. In so far as the reasonableness of the classification of services here involved, and of the differences between the rates in the respective classes, is an administrative or factual question, we cannot disturb the commission's findings thereon, if supported by competent evidence: *American Lime & Stone Co. v. P. S. C.*, supra, at page 162; *Hunter v. P. S. C.*, supra, at page 598.

The record contains competent evidence of these facts: Appellant purchases current from respondent at five separate points in Crawford County, viz., (1) West of Espyville Village, (2) South of Harmonsburg Borough, (3) near the boundary of West Mead and West Fair-

field Townships, (4) Sparta Township, and (5) Saegerstown Borough, at a voltage of 6900 and at one place at 2200 volts.

The contract between appellant and respondent provides that the meter readings at the several points of delivery shall be totaled, and the rates computed as if purchased at one point. His patrons total 2604, comprised of 819 residential consumers, 1550 rural, 204 commercial and 31 industrial.

The cooperative association furnishes current to members only, numbering approximately 1600; it serves farms and rural areas exclusively, and has no industrial consumers. The association takes its entire requirement from the Pennsylvania Electric Company at a single point, near Saegerstown Borough and at a voltage of 33,000.

The contract between respondent and the cooperative provides that the association shall install and maintain all fuses, switches, transformers or other apparatus which may be necessary at the point of connection of the respondent's lines with those of the association. The power company's contract with appellant contains no such provision, thereby placing the duty of supplying connecting facilities at the points of service on it.

Although appellant, over a period covering 1937 and 1938, purchased approximately two and one half times as much current as the cooperative, in terms of kilowatt hours; the maximum and minimum demands at the five points of delivery to him were not coincident; they occurred in different months. Furthermore, the total maximum and minimum demands billed appellant occurred in different months of the year than similar total billings to the cooperative association. For instance, appellant's total maximum occurred in August, while cooperative's came in December.

Respondent's engineer and vice-president estimated appellant would have to install equipment costing $94,-

985, in order to receive service at high voltage at a *single* metering point, thereby making his system substantially the same as that of the cooperative.

A mathematical illustration of the contention between appellant and the respondent company is found in respondent's exhibits Nos. 2 and 3—110a and 111a. For the month of September, 1938, appellant was billed for $4130.09—Ex. No. 3. Exhibit No. 2 is a statement, prepared by appellant and submitted to respondent, setting forth appellant's calculation of the amount which would have been due respondent if appellant's consumption for that month had been billed at the rates set forth in Supplement No. 5. That amount would have been $2928.49 for current, but the statement contains the following additional item: "Plus 10% for transformation because of using 6,900 volts instead of 33,000 volts and not purchasing total energy at one point." Respondent contends (and there is force in the suggestion) that the inclusion by appellant of this additional item is a concession upon his part that there is a material difference between the conditions under which service is rendered the cooperative and those attendant upon the service supplied to him.

At the time of the hearings appellant and the cooperative were not in competition, and the territories each served did not coincide.

To summarize, the record discloses these differences in class and type of the service rendered appellant and that given the cooperative. The cooperative is a nonprofit association, operating in rural areas only, serving only members of the association, taking all its energy at one point and at a higher voltage, and bound by its contract to provide and maintain all necessary transformer facilities between it and the respondent; in addition, the maximum and minimum demands of appellant and the association occur in different months. Obviously, these differences all have a material bearing,

although they may vary in weight, on the cost to respondent of the service rendered, and hence on the reasonableness of the rate charged.

Our review of the record has convinced a majority of our members there is evidence to sustain the commission's conclusion that the refusal to bill appellant under Supplement No. 5 is justified by a substantial difference in the type and conditions of the respective services rendered.

Neither the provision of Section 32 of the Act of June 21, 1937, P. L. 1969, supra, reading:

"All corporations organized under this act shall be exempt in any and all respects from the jurisdiction and control of the Pennsylvania Public Utility Commission of this Commonwealth," nor the similar provision in our Public Utility Law of May 28, 1937, P. L. 1053, supra, is involved in this case—the electric cooperative association is not a party—and we express no opinion upon the validity of either.

The conclusion of a majority of this court is that the findings of the commission are supported by substantial and competent evidence and that no error of law has been committed.

Order affirmed at the costs of appellant.