Deitch Company et al., Appellants, *v.*
Pennsylvania Public Utility
Commission.

Argued June 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY and FLOOD, JJ. (RHODES, P. J., absent).

*Alexander Cooper,* for appellants.

*William A. Goichman,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Warren D. Mulloy,* with him *John B. Prizer,* for intervening appellee.

OPINION BY WRIGHT, J., September 17, 1964:

On February 9, 1962, The Deitch Company and the Essex Steel Corporation joined in filing a complaint against the Pennsylvania Railroad Company averring that freight rates charged on shipments of scrap iron between Sharpsburg and Brackenridge were unreasonable, discriminatory and in violation of the Public Utility Law. Act of May 28, 1937, P. L. 1053, 66 P.S. 1101 et seq. · The complainants, shippers of iron and steel scrap from their plants at Sharpsburg to the Allegheny-Ludlum Steel Corporation at Brackenridge, sought reparations for excessive rates already paid, and requested the Commission to establish reasonable future rates. After taking testimony at four hearings, the Commission, on May 27, 1963, entered an order dismissing the complaint. This appeal followed.

The amended complaint alleged that the Sharpsburg-Brackenridge rate on scrap iron was unreasonable and discriminatory in comparison with seven tariffs between other points of comparable mileage, and because the rate on scrap iron from Butler to Brackenridge, a distance of 27 miles, was the same as that between Sharpsburg and Brackenridge, a distance of only 17

miles. Complainants assert in effect that the Sharpsburg-Brackenridge rate should be fixed on a mileage basis, as opposed to a group basis. In dismissing the complaint, the commission held that the Sharpsburg-Brackenridge rate attacked was not shown to be unreasonable or discriminatory, since such rate, as well as the Butler-Brackenridge rate, came within the principle of group rates "wherein mileage is disregarded to a degree, in favor of more suitable and stable measures, namely, economic and competitive conditions between producers and consumers".

The record shows that rates for scrap iron are fixed on the basis of a minimum weight of 44,800 pounds, with larger quantities of a minimum weight of 80,000 pounds having a lower rate. Shippers from Butler compete with complainants at Sharpsburg and presently have the same rate of $1.90 per gross ton, minimum weight of 80,000 pounds. Under their own formula, calculated on a cost per car mile basis as applied to the Butler-Brackenridge rate, complainants seek a rate of $1.24 per gross ton (80,000 pounds minimum weight), and also request the establishment of a new rate of $1.11 based on a minimum weight of 100,000 pounds. The Commission found that there was no need for the new 100,000 pound minimum rate, and its finding in this regard is not seriously questioned. The 44,800 pound minimum weight rate is of little moment from a practical standpoint, since most shippers now use the 80,000 pound minimum weight rate.

It is not disputed that Sharpsburg has been grouped for many years with various stations within a radius of Brackenridge extending as far as Corliss, 28 miles distant, the group being known as the Pittsburgh switching district. Within this group rates are the same to a given destination regardless of mileage. Prior to November 24, 1951, both Sharpsburg and Butler had the same rate to Brackenridge. As of that

date, the Sharpsburg-Brackenridge rate was reduced to $1.67, minimum weight 44,800 pounds, on the ground that the scrap iron rate should not exceed the manufactured iron and steel rate to the same point: *Deitch Co. v. P. R. R.*, 29 Pa. P.U.C. 774. According to the carrier's witness Seip, this $1.67 rate gave Sharpsburg an advantage over competing origins in the Pittsburgh switching district. In recapitulating the subsequent rate history it should be pointed out that increases occur over the years when the carrier applies intrastate a rate increase allowed by the I.C.C. interstate, and are known as ex parte increases. Without going into excessive detail, the 1951 rate remained in effect, subject to ex parte adjustments, until 1959. It varied from $1.67 in 1951, to $2.04 in 1956,[1] to $2.73 in 1958. On February 1, 1959, in order to meet truck competition, the railroad voluntarily reduced the rate to $2.07 (44,800 pounds minimum weight) and established a rate of $1.79 on minimum weight shipments of 80,000 pounds. On January 24, 1960, the present rates of $2.18 and $1.90 became effective as the result of an ex parte adjustment. On June 18, 1961, a reduction in the Butler rate restored it to its original position of equality with Sharpsburg and other Pittsburgh switching district points.

Complainants presented extensive evidence tending to show that the Sharpsburg-Brackenridge rate was unreasonable and discriminatory in comparison with rates calculated on a mileage basis between other points in the Pittsburgh area, ranging from 14 to 34 miles and including Butler-Brackenridge. For instance, complainants' witness Russell alleged that the carrier earned an average of 10.5 cents per mile per gross ton on shipments from Sharpsburg to Brackenridge and only 6.6 cents per mile on Butler to Bracken-

---

[1] The Deitch Company unsuccessfully attacked this rate: *Deitch Co. v. P. R. R.*, 34 Pa. P.U.C. 182.

ridge shipments. Complainants also contend that average earnings and rates on comparable distances on other railroads were lower than the Sharpsburg-Brackenridge rates and earnings. In some instances, the rates listed by complainants for comparison were only published or "paper rates". Cf. *New York Central R.R. Co. v. Pa. P.U.C.*, 191 Pa. Superior Ct. 124, 155 A. 2d 445.

The carrier introduced extensive countervailing evidence, specifically answering complainants' witness Russell, and tending to show that the Sharpsburg-Brackenridge rate under attack was reasonable and below the average for scrap iron rates in the Pittsburgh area. According to the carrier's witness Seip, the average rate for scrap iron per gross ton in the Pittsburgh area was $2.0232. This witness testified that terminal costs are constant, and constitute the main cost factor in determining rates. "From the standpoint of costs, there is little difference whether a car is hauled one mile or thirty". The evidence offered by the carrier was to the effect that the selected comparisons and exhibits referred to by witness Russell did not reflect a true picture of the operations and rates under attack. Complainants had the burden of proof to show that the Sharpsburg-Brackenridge rate under attack was unreasonable: *Allegheny Ludlum Steel Corp. v. Pa. P.U.C.*, 166 Pa. Superior Ct. 173, 70 A. 2d 475; *Pa. R.R. Co. v. Pa. P.U.C.*, 135 Pa. Superior Ct. 5, 4 A. 2d 622. It was the duty of the Commission to harmonize the conflicting testimony: *Pittsburgh Rwys. Co. v. Pa. P.U.C.*, 198 Pa. Superior Ct. 415, 182 A. 2d 80.

Complainants' chief point of attack was their attempt to show that the Sharpsburg-Brackenridge rate is unreasonable and discriminatory because it is the same as the Butler-Brackenridge rate, which involves a longer haul. Complainants point to the fact that the

Sharpsburg-Brackenridge route is a water level, non-switching route, while Butler-Brackenridge involves switching operations, grades, bridge maintenance and other additional costs. As previously indicated, Butler was on a parity with Sharpsburg prior to November 24, 1951. Sharpsburg then obtained a lower rate as the result of the Commission's order in *Deitch Co. v. P. R. R.*, 29 Pa. P.U.C. 774, which gave Sharpsburg an advantage over other competing origins. On February 1, 1959, by means of the carrier's voluntary reduction, Sharpsburg's rate was fixed at $1.79 per gross ton, minimum weight 80,000 pounds. The Commission stated in the present case that "the equalization of the Butler-Brackenridge rate with the Sharpsburg-Brackenridge rate returned the Butler rate to its original position of equality with the Sharpsburg rate and other Pittsburgh switching district points". The Commission therefore held that Butler and Sharpsburg were properly treated as equal under the established principle of group rates. Complainants contend that the record here, and prior decisions of the Commission, show that the Butler reduction was made in disregard of grouping.

The carrier introduced evidence showing that unless Sharpsburg, Butler, and points in the Pittsburgh switching district were given group rates, it would lose traffic. The Commission pointed out that the June 18, 1961, reduction in the Butler-Brackenridge rate was occasioned by a threat of truck competition. As already indicated, this was the reason for the carrier's voluntary reduction in the Sharpsburg rate on February 1, 1959. It was proper for the Commission to consider the effect of competition in determining whether the rate attacked was unreasonable or discriminatory. Competing carriers may, within the zone of reasonableness, adjust their rates to meet competition: *Texas & Pacific Rwy. Co. v. U. S.*, 289 U. S. 627, 53 S. Ct. 768,

77 L. Ed. 1410; *Pa. R.R. Co. v. P. S. C.*, 126 Pa. Superior Ct. 1, 190 A. 372.

The establishment of group rates on a reasonable basis, in order to equalize competitive opportunities, has long been recognized and approved: *U. S. v. Illinois Central R.R.*, 263 U. S. 515, 44 S. Ct. 189, 68 L. Ed. 417; *Ayshire Corp. v. U. S.*, 335 U. S. 573, 69 S. Ct. 278, 93 L. Ed. 243. Section 304 of the Public Utility Law (66 P.S. 1144), which proscribes discrimination in rates, expressly sets forth that it does not prohibit "the establishment of reasonable zone or group systems, or classification of rates". See *Pa. R.R. Co. v. Pa. P.U.C.*, supra, 135 Pa. Superior Ct. 5, 4 A. 2d 622; *B. & O. R.R. Co. v. Pa. P.U.C.*, 135 Pa. Superior Ct. 20, 4 A. 2d 628; *Pa. R.R. v. Pa. P.U.C.*, 135 Pa. Superior Ct. 154, 4 A. 2d 815. This section of the statute, like its predecessor, does not forbid reasonable classification of service or rates, and what is reasonable under the circumstances is primarily an administrative question for the Commission to decide: *Alpha Portland Cement Co. v. P. S. C.*, 84 Pa. Superior Ct. 255.

The application within an area of a uniform blanket or group rate on the issue of discrimination is essentially a problem in transportation economics upon which the Commission, as an administrative body is peculiarly fitted to pass: *Illinois Commerce Commission v. U. S.*, 292 U. S. 474, 54 S. Ct. 783, 78 L. Ed. 1371; *New York v. U. S.*, 331 U. S. 284, 67 S. Ct. 1207, 91 L. Ed. 1492; *American Lime & Stone Co. v. P. S. C.*, 100 Pa. Superior Ct. 158. The question of the reasonableness of rates and the difference between rates in their respective classes is an administrative or factual question wherein the findings of the Commission, if supported by competent evidence, will not be disturbed: *B. & O. R.R. v. P. S. C.*, 66 Pa. Superior Ct. 403; *Reading Coach Co. v. P. S. C.*, 125 Pa. Superior Ct. 493, 190 A. 172; *Carpenter v. Pa. P.U.C.*,

141 Pa. Superior Ct. 447, 15 A. 2d 473. In the case at bar, the issue of grouping, and the question of whether the Sharpsburg-Brackenridge rate attacked was unreasonable or discriminatory with relation to the Butler-Brackenridge rate, or any other rate, was a question of fact to be decided by the Commission on the evidence before it. Any conflicts on these points in the evidence were properly resolved by the Commission: *Pittsburgh Rwys. Co. v. Pa. P.U.C.*, supra, 198 Pa. Superior Ct. 415, 182 A. 2d 80. The record does not show that the Commission failed to give proper consideration to the question of whether the Sharpsburg-Brackenridge rate was discriminatory. There was evidence in the record from which the Commission could find that a rate based primarily on mileage would disrupt the workable relationships set up under what were essentially group rates. Cf. *Pennsteel Corp. v. B. & O. R.R. Co.*, 34 Pa. P.U.C. 118.

The function of this court on appeal is to determine whether there is error of law or lack of evidence to support the finding, determination, or order of the Commission: *N. Y. Central R.R. Co. v. Pa. P.U.C.*, 193 Pa. Superior Ct. 636, 166 A. 2d 55; *Pittsburgh Rwys. Co. v. Pa. P.U.C.*, supra, 198 Pa. Superior Ct. 415, 182 A. 2d 80. On this record the Commission could properly find that complainants had not sustained their burden of proof to show that the rates attacked were unreasonable or discriminatory. We may not substitute our judgment for that of the Commission on the reasonableness of the rate prescribed. It does not appear that the Commission's dismissal of the complaint was arbitrary, unsupported by evidence, or an abuse of discretion. We perceive no error of law or violation of constitutional rights.

Order affirmed.