193     175
19 SC ²523

George M. Baily, Appellant, *v.* The Fayette Gas-Fuel Company.

*Corporations—Natural gas companies—Corporate power—Rates to consumers.*

A corporation chartered under the Act of May 29, 1885, P. L. 29, to produce, transport, supply, etc., natural gas for heat, light or other purposes, which actually supplies gas for both heat and light, has no power to make a difference in price according to the use to which the gas is put by the consumer.

A corporation of a quasi-public character cannot impose a discrimination in the price of its product based solely on the value of the service to the customer.

Argued May 10, 1899. Appeal, No. 170, Jan. T., 1899, by plaintiff, from decree of C. P. Fayette Co., No. 286, in equity. Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Bill in equity for an injunction.

The facts appear by the opinion of Reppert, J., which was as follows :

The Fayette Gas-Fuel Company was incorporated October 21, 1887, under the act of May 29, 1885, providing for the incorporation and regulation of natural gas companies. This company, becoming embarrassed, its franchises and property were sold at sheriff's sale and the purchaser, with others in 1892, reorganized the company under the name of the Fayette Gas-Fuel Company. It is the only company supplying natural gas within the borough of Uniontown. The company was incorporated for the purpose of producing, dealing in, transporting, storing and supplying natural gas. Uniontown and other points in Fayette county within convenient distance of the company's lines are named as the places where gas is to be supplied to consumers. The principal business of the company is and has been the supplying of natural gas to its consumers as a fuel, and the company desired to confine its business exclusively to that purpose. To a greater or less extent, however, natural gas has been used as an illuminant by the customers of these companies since their or-

ganization, and this court, in the case of I. N. Hagan v. The Fayette Gas-Fuel Company, at No. 259, in equity, in the opinion filed July 14, 1898, by Judge J. F. SLAGLE, has declared it to be the duty of the defendant to furnish its product for all purposes for which that product has been used heretofore.

While some of the former officers and employees of the defendant company knew of the use of their product for light by consumers, yet the present officers of the company allege that they learned for the first time of the extent of the use of natural gas for domestic lighting in the trial of the Hagan case, the connections in most instances between the systems of pipe for lighting and heating having been made without their knowledge, the connections so made of which they were aware being few in number and restricted to locations not served by artificial gas mains, such connections being permitted as a matter of accommodation to their customers.

In the fall of 1896, the company began introducing the meter system, since which time the general rate to all consumers has been twenty-five cents per 1,000 cubic feet, with a discount for prompt payment. In the case of manufacturers where large quantities are used a different rate is given, but for domestic consumers the uniform rate has been as above stated, without regard to the purpose for which the gas has been used, whether for light or heat, and with a minimum charge of $1.00 per month to each consumer.

At or about the time the meter system was adopted by the company, the Welsbach and similar burners were put on the market. Used through these burners natural gas was found to be an excellent illuminant, those of the witnesses who compared it to artificial gas testifying that it thus produced a light superior to that of the artificial product and much more economical in the quantity of gas consumed as compared with artificial gas burned through the ordinary burner.

On September 21, 23 and 24, 1898, the defendant company caused to be inserted in the Daily News Standard, published in Uniontown, an advertisement, notifying domestic consumers of natural gas that after October 1, 1898, the rates for gas would be as follows: For heat, twenty-five cents per 1,000 cubic feet; for light, $1.50 per 1,000 cubic feet; and requiring all consumers desiring to use gas for light to notify the company immediately

that the light meters might be set.   At or about the same time similar notices were mailed to the company's customers.   The plaintiff, a resident of Uniontown, saw the notice as published and also received one by mail.   On or about October 3, 1898, an employee of the defendant company notified the plaintiff orally that if he did not call immediately at the defendant's office and make arrangements for using the gas for illumination the gas would be shut off, whereupon the plaintiff filed the bill in this case, alleging that the proposed difference in charge for gas used for illuminating and heating purposes is an unjust and unlawful discrimination, and an unreasonable regulation, not made in good faith, but for the benefit of other corporations; that the proposed action of the defendant would be a violation of the plaintiff's rights and the defendant's duties and would work a continuous and irreparable injury to the plaintiff, and praying that the defendant be restrained from shutting off plaintiff's supply of natural gas and from any interference with the connection between its mains or supply pipe and plaintiff's premises, which would prevent him from using natural gas for either heating or illuminating purposes, so long as the plaintiff continues to pay the usual rates charged generally for gas, without discriminating as to the use thereof for illuminating purposes, etc.

Natural gas is delivered by the company to the domestic consumer at the curb, gas for all purposes being delivered at the curb through one and the same system of mains and service pipes and heretofore measured by a single meter.   The application of the gas to different purposes is made by the consumer by a system of pipes constructed by him through which the gas passes after delivery at the curb by the company.   The plaintiff contends that under these circumstances the company has no right to make the discrimination proposed in its prices, based upon the application made of its product by the consumer; that after passing from the mains of the company into the pipes of the consumer, it is the property of the consumer, to be used by him in such way and for such purposes as may best suit his needs, at a single rate for the entire amount used.   While the "commodity" and "property" argument is ingenious and plausible it may be noticed in passing that it would be equally applicable in support of the position that it

is the duty of the defendant to supply gas to the consumer without regard to the use made of it by the consumer, whether for heat or for light; yet the decision above referred to in the Hagan case, which declared it to be the duty of the defendant company to furnish gas for light, was not based even in part, upon that ground. If the argument is correct the application of natural gas to different purposes and uses is a matter entirely within the control of the consumer, with which a company chartered to produce and supply the product has, and can have, nothing to do, and any dictation or control of the use of the product by the company directly or indirectly, after purchase and delivery, by virtue of any act of assembly or otherwise, would be a flagrant and unconstitutional interference with the right of private property. In such a view of the case it would not only be unnecessary, but unlawful, for a natural gas company to set forth in its application for a charter the purposes for which it proposed to supply its product to consumers, for the consumer would have the sole right to determine the use to be made by him of the gas purchased. It is true, as stated by plaintiff's counsel, that a natural gas company is not a supplier of nor dealer in heat or light, but it may be incorporated for the purpose of supplying gas for either, or both, or other purposes, or the corporation may determine the purpose for which it will furnish natural gas to consumers, and who doubts that it is not only the right, but also the duty, of a company incorporated for the purpose of supplying gas for light alone, or electing to furnish it for light alone, for instance, to restrict the use of its product by the consumer after delivery to and possession by the consumer? Otherwise the company would be under pain of forfeiture of its chartered privilege. We hardly think the property in, and the right to control natural gas, acquired by the consumer, after purchase and delivery to him by the company at the curb, even in the absence of any considerations relating to costs, expense of supplying, trouble of inspection and other kindred causes affecting the company's interest, is similar in all other respects to that acquired in and over a pound of coffee or sugar after purchase from and delivery by the grocer, as argued by the plaintiff's counsel.

So far as concerns this case the defendant company may be regarded as incorporated for the purpose of supplying natural gas to consumers for heat and light.

As a fuel its product comes into competition with coal, and in order to find a market for gas as a fuel the company must make such a rate that consumers, after considering the relative value and advantages and prices of the two fuels, may be induced to purchase gas to the extent of the business desired by the company. In fixing such a competitive rate the cost of supply to the company is not considered except in relation to the minimum rate at which gas can be profitably marketed. When profitable business can be obtained by a company furnishing gas as a fuel in competition with coal or other fuel the cost of the supply of gas to the company is not a factor in fixing the rate charged the consumer. The rate under such conditions is affected chiefly by the desire to obtain and retain business, the value, advantages or disadvantages, and prices of the competitive fuels, and it is made with a view of obtaining the greatest amount of profit which the conditions of the business legitimately will yield, and the same rule is followed in every other business and enterprise. The reasonableness of the rate does not depend upon the profits which the company may make, but upon what is reasonable to be charged the person making the payment in consideration of the benefits conferred. If in competition with coal at seven and one half cents per bushel, the present rate here, a sufficient number of customers could be obtained who, on account of the superior value and advantages of natural gas as a fuel, preferred gas at fifty cents per 1,000 cubic feet, that would be the rate for gas for fuel instead of twenty-five cents per 1,000 cubic feet, the present price, without regard to the profits which the company might make. Nor would such a rate, under such circumstances, be an unreasonable regulation. It would be simply the application of a principle known and adhered to by every individual, firm or corporation that buys or produces and sells.

Natural gas used for light takes the place of and is used in competition with refined petroleum, electricity and artificial gas. Burned through a Welsbach or similar burner the testimony is that it produces a light superior to artificial gas—about the best light he ever had, the plaintiff says. There is a wide difference between the value of the coal displaced by 1,000 cubic feet of natural gas used as a fuel, and the value of the carbon oil, electricity or artificial gas displaced by 1,000 cubic feet of

natural gas used as an illuminant. Approximately the coal is worth twenty-five cents, and the carbon oil, electricity and artificial gas are worth respectively $1.50. The natural gas in both cases has been furnished heretofore for twenty-five cents, and the consumer for light has had the advantage of the difference of $1.25. Assuming that the prices charged for oil, electricity and artificial gas are reasonable, is he entitled to it? Or has the company a right to make and enforce a regulation that will enable it to ascertain the amount of natural gas used as an illuminant, and to charge a rate for the gas so used, determined by its value as an illuminant in comparison with and in competition with oil, electricity and artificial gas, or any other illuminant, and not by its value as a fuel in comparison with and in competition with coal? The difficulty is occasioned by the fact that a single product, used for two different purposes and of sufficient quantity to supply both, comes into competition with other products, used for these two purposes respectively, but of widely different values. The plaintiff contends that the defendant company should fix one uniform rate for its product, taking into consideration all the uses which render it desirable and valuable, and to which it may be applied, and that even if it should be permitted to make different rates for fuel and light, the present rates fixed by the company are so widely divergent as to be unreasonable and unjust.

If a natural gas company incorporated for the purpose of supplying gas for light, or choosing to supply it for that purpose, were doing business in this place, under the evidence in this case $1.50 per 1,000 cubic feet could not be regarded as an unjust or unreasonable price for its product, its value being ascertained by a comparison with the prices and values of competitive illuminants. A similar company incorporated or choosing to supply gas for heat alone might at the same time sell its product for twenty-five cents per 1,000 cubic feet. May not a company authorized by its charter to supply gas for both purposes and which has, by its act, as this court has declared, so determined, do what a company incorporated for either purpose might do? . . . .

Holding then that the defendant company has the right to make one rate for its product for fuel and another rate for light, are the present rates unreasonable or unjust? No com-

plaint is made as to the rate for fuel. As to the rate for light we think the answer is found in a comparison of the rate imposed with the rates charged for other illuminants, and which may be regarded, under the testimony, as reasonable. Tried by such a standard as heretofore shown the rate is not an unreasonable one. . . .

It is also objected that the proposed regulation is an unjust discrimination between persons, and therefore unlawful, as where the company delivers 5,000 cubic feet of gas to one customer who uses it for light for which it charges $7.50 and to an adjoining customer the same amount of gas through the same pipe, same kind of meter, same inspection system, same kind of gas, in every respect the circumstances and conditions, which is used for heat, but for which the company charges only $1.25. The discrimination is more apparent than real. Are the circumstances affecting the price of the product the same in both cases? Suppose both should be deprived of gas and required to procure other means of heating and lighting; the one customer instead of natural gas uses oil, artificial gas or electricity. His light will cost him approximately $7.50. The other customer uses coal. It will cost him approximately $1.25. Wherein has injustice been done to either? Would not the discrimination be far more unjust if the same rate for gas were given to each? The regulation and rates complained of operate on all alike. There is no preference between individuals or customers, and, in our opinion, the objection urged cannot be sustained.

After a careful consideration of all the evidence in the case our conclusion is that the motion to dissolve the preliminary injunction heretofore granted must be sustained.

The court entered a decree dissolving the preliminary injunction.

*Error assigned* was the decree of the court.

*Howard L. Robinson,* of *Robinson & McKean,* for appellant. —By-laws and regulations of corporations, public or private, must be reasonable: Endlich on Interpretation of Statutes, 491; Kneedler v. Boro. of Norristown, 100 Pa. 368; Commissioners v. Gas Co., 12 Pa. 318; Pittsburg's App., 115 Pa. 4.

The courts have at all times and everywhere passed upon the question of such reasonableness: Shepard v. Milwaukee Gas Light Co., 15 Wis. 318.

No public or quasi-public corporation can make unjust discrimination between customers, and a mandamus will issue to compel it to furnish its facilities, products or whatever it deals in, to any person paying the usual rate : State v. Nebraska Telephone Co., 17 Neb. 126 ; Cent. Union Tel. Co. v. State, 118 Ind. 194; Com. Union Tel. Co. v. New England Tel. & Tel. Co., 17 Atl. Rep. 1071 ; Williams v. Mut. Gas Co., 52 Mich. 499 ; Cook on Stocks and Corporations, sec. 927.

*S. E. Ewing,* of *N. & S. E. Ewing,* and *John G. Johnson,* for appellee.—The charter of the appellee imposed upon it no duty to furnish gas for illuminating purposes.

The appellee was legally justified in raising the price of gas for illuminating purposes to $1.50 per 1,000 cubic feet.

Persons using gas for illuminating purposes are not entitled to demand its supply at the same rates charged to those using it for fuel: Philadelphia Co. v. Park Bros. & Co., 138 Pa. 346 ; Hoover v. Penna. R. Co., 156 Pa. 220 ; Phipps v. London & Northwestern Ry. Co., L. R. 1892, 2 Q. B. 229.

The appellee may make any regulations as to the purpose of its supply and as to the price thereof which would be within the power of a corporation just starting in business.

OPINION BY MR. JUSTICE MITCHELL, October 6, 1899 :

The defendant company was chartered under the Act of May 29, 1885, P. L. 29, to produce, transport, supply, etc., natural gas for heat, light or other purposes. It has been supplying the gas for both heat and light, and proposes to continue doing so, but upon terms making a difference in price according to the use to which the gas is put by the consumer. The question now before us is the reasonableness of this regulation.

In his opinion the learned judge below said, " So far as concerns this case the defendant company may be regarded as incorporated for the purpose of supplying natural gas to consumers for heat and light." Not only did its charter powers cover both uses, but as already said its actual operation has included both, and it is not intended now to abandon either,

even if that could be done. The corporate powers are the measure of corporate duties.

The gas is brought by the company through the same pipes for both purposes and delivered to the customers at the same point, the curb. Thence it goes into pipes put in by the consumer and, after passing through a meter, is distributed by the customer through his premises according to his own convenience. The regulation in question seeks to differentiate the price according to the use for heating or for light. It is not claimed that there is any difference in the cost of the product to the company, the expense of supplying it at the point of delivery or its value to the company in the increase of business or other ways. Some effort was made to show increased risk to the company from the use of gas for lighting purposes, but the evidence of danger was so remote and shadowy that it cannot be considered as more than a mere makeweight. The real argument seeks to justify the difference in price solely by the value of the gas to the consumer, as measured by what he would have to pay for a substitute for one purpose or the other if he could not get the gas. This is a wholly inadmissible basis of discrimination.

The implied condition of the grant of all corporate franchises of even quasi-public nature is that they shall be exercised without individual discrimination in behalf of all who desire. From the inception of the rules applied in early days to innkeepers and common carriers down to the present day of enormous growth of corporations for nearly every conceivable purpose, there has been no departure from this principle. And from all the legion of cases upon this subject the distinguished counsel for the appellee have not been able to cite a single one in which a discrimination based solely on the value of the service to the customer has been sustained. Hoover v. Penna. R. Co., 156 Pa. 220, was much relied on by the court below, but was decided on a very different principle. That was an action for damages for unlawful discrimination by a dealer in coal, because a manufacturing company had been allowed a rebate on coal carried to it. But it was held that as the rebate was allowed in consideration of a minimum of coal to be carried per day, and also in view of return freight on the product of the manufacturing company, it was not an unreasonable discrimi-

nation ; in other words, that the company might look for its compensation not only to the actual money freights from present service, but also to increased business to grow out of the establishment of a new industry in that place. So also Phipps v. London & Northwestern Ry. Co., L. R. 1892, 2 Q. B. 229, cited for appellee, where the decision was put upon the right of the railroad to make special rates for freights from distant points which otherwise it could not get at all. Both cases belong to the numerous class of discrimination sustained on the basis of special advantages to the carrier, not the customer.

Decree reversed, injunction directed to be reinstated and made permanent. Costs to be paid by appellee.