## Weiner v. Hospital Service Plan of the Lehigh Valley

690

*Mindlin & Sigmon,* for plaintiff.

*Butz, Hudders, Tallman & Rupp,* for defendant.

HENNINGER, P. J., January 20, 1958.—Plaintiff, a dentist and owner and operator of a dental hospital, so licensed by the Department of Welfare of the Commonwealth of Pennsylvania, brought this action in equity against defendant, more popularly known as Blue Cross, to enjoin discrimination against his hospital and defendant's subscribers by refusing to pay for services rendered in said hospital.

Plaintiff recites the excellency of his hospital, as attested by words of praise on the part of defendant's executive director, that the Joint Committee on Accreditation of Hospitals has never approved dental hospitals and therefore will not approve his, that there is dire need for hospital facilities, that defendant has a monopoly on hospitalization insurance in its territory and that its refusal to recognize his hospital is detrimental to the public health and welfare and is discriminatory.

Plaintiff has attached to his complaint a typical copy of defendant's contract with its subscribers.

Under section 1 of this contract, defendant provides, in part, that the subscriber may select any "approved hospital". In section XIV an approved hospital is defined as follows:

"4. Approved Hospital: The term 'Approved Hospital' shall mean a hospital which is either,

"(a) A Contracting Hospital of Blue Cross, meaning a hospital with which Blue Cross has a contract, for the rendering of hospitalization covered by this Agreement, or

"(b) An Inter-Plan Hospital, meaning a hospital which has a contract with a Blue Cross hospital service plan approved and licensed as such by the American Hospital Association and which is an eligible participant of the Inter-Plan Service Benefit Bank, or

"(c) A Non-Contracting Hospital, meaning a school infirmary or a hospital which is not a veterans' or United States Government hospital, but which is approved by the Joint Committee on Accreditation of Hospitals or by Blue Cross.

Defendant filed preliminary objections in the nature of a demurrer. Plaintiff at argument conceded that neither laudatory statements by defendant's executive nor his statement that plaintiff's hospital would be approved on a certain date could bind defendant. He relies upon these two propositions: (1) That by law, defendant is required to contract with all hospitals approved by the Department of Welfare, and (2) that, since defendant corporation operates in the public interest, its monopoly can be restrained.

Plaintiff bases its first proposition upon the provisions of section 3 of the Nonprofit Hospital Plan Act of June 21, 1937, P. L. 1948, 15 PS §2851-1303, which reads:

"Any nonprofit corporation, subject to the provisions of this act, may enter into contracts for the rendering of hospitalization to any of its subscribers only with hospitals operated by the Commonwealth, or its agencies, or by political subdivisions, or by corporations organized under the laws of this Commonwealth for hospital purposes, or with such other hospitals as are approved by the Department of Welfare."

A similar argument was made in Knecht v. Medical Service Association of Pennsylvania, Inc., 27 Leh. 388, in relation to section 3 of the Act of May 12, 1949, P. L. 1261, 15 PS §2851-1503, where, page 392, we

held that the clause defining services was a clause of limitation and not one of direction.

When we study section 3 of the 1937 act, as above quoted, it is clear that a corporation formed under the act *may* enter into contracts *only* with hospitals as defined in that section. There is no provision that they shall or must contract with every hospital answering any one of the descriptions. The additional word *only* also emphasizes that section 3 is a clause of limitation. Although the word "shall" might, in a proper setting, be interpreted as permissive, the word "may" can never be given the imperative meaning. See Connell v. Kennett Township, 356 Pa. 585, 589; Commonwealth v. A. M. Byers Company, 346 Pa. 555, 561.

We can assume that "such other hospitals" in section 3 includes dental hospitals although there is no mention of dental hospitals in the Act of June 12, 1931, P. L. 510, as amended by the Act of April 12, 1956, P. L. 1460, 35 PS §424-430, which provides for the licensing of nursing homes or private hospitals. Plaintiff therefore would be one with whom defendant has the legal right to contract. It by no means follows that defendant can be compelled to so contract.

Defendant has chosen to limit its services to hospitals: (a) With which it has actually contracted; or (b) with which a similar Blue Cross plan has contracted; or (c) which is approved by the Joint Committee on Accreditation of Hospitals; or (d) which has been approved by Blue Cross. Plaintiff's hospital admittedly does not come within any of these categories. It is not, therefore, an "approved hospital" for whose services to its subscribers Blue Cross has obligated itself to pay under section 1 of the contract.

It is fair, at this state of the proceedings, to assume that defendant's contract with its subscribers has at least the tacit approval of the insurance department as required by section 4 of the act under which defendant is operating, 15 PS §2851-1304.

The charge of monopolistic practices raises many questions: (1) Can we take judicial notice that there are many other companies selling hospitalization insurance; (2) is defendant a corporation coupled with a public interest; (3) does an action against defendant as a monopoly lie in our courts; (4) has plaintiff a standing to raise the question of a monopoly.

We know, of course, that defendant does not actually have a monopoly on hospitalization insurance. There are many private business corporations operating in this field. Many persons, while members of Blue Cross, also purchase hospitalization insurance with private business corporations. However, since this case comes to us on demurrer, we do not choose to decide it on the basis of any actual knowledge of our own conflicting with a statement of fact as pleaded. We are assuming, therefore, that defendant actually has a monopoly hold on hospitalization insurance in our neighborhood.

Any such monopoly does not exist by legislative fiat. While an application for incorporation as a nonprofit hospitalization insurance plan requires prior approval by the insurance department (see Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended by the Act of June 21, 1937, P. L. 1980, 15 PS §2851-4 and 218), there is nothing in the act which limits the number of such corporations in a given locality or which authorizes the insurance department to grant a monopoly to any one such corporation. Any monopoly which may exist arises, therefore, from the unwillingness of others to compete and not from any franchise granted by the State to defendant.

We may further assume, for the purposes of this opinion, that defendant is a corporation with a quasi-public interest, although it has received nothing from the State that is not granted to every other nonprofit corporation. Unlike the Nonprofit Medical Service Cor-

poration Act of June 27, 1939, P. L. 1125, secs. 2 and 8, 15 PS §2851-1502 and §2851-1508, this act contains no declaration of public necessity for its existence; nor does it require defendant to deal with all hospitals as section 8 of that act requires a corporation to deal with all doctors and dentists. It is difficult to say whether the Hospitalization Plan Act accords a privilege or merely limits an existing privilege. The act appears to do both; for the clear privilege to defendant of operating as a nonprofit corporation, it imposes a limited supervision by the insurance department.

Nor is defendant rendered a quasi-public corporation on the basis of anything stated in the opinion in Bailey v. The Fayette Gas-Fuel Co., 193 Pa. 175, cited by plaintiff. In that case the corporation had the power of eminent domain (see Act of May 29, 1885, P. L. 29, sec. 1, subpar. V, 15 PS §1981), and by section 10 of the same act (15 PS §1989) there is imposed upon it the duty to serve all potential customers.

To the extent, however, that the Commonwealth granted certain privileges to defendant, it is answerable for the proper exercise of those privileges: Commonwealth ex rel. v. American Baseball Club, 290 Pa. 136, 145. It must be remembered, however, that the Commonwealth did not demand anything from defendant except to operate within its charter and to accept limited supervision from its insurance department. In the very field of plaintiff's complaint, the legislature granted defendant discretion instead of imposing direction.

We can find no basis upon which plaintiff has a standing to question defendant's alleged prejudicial use of its monopolistic power. He is not a public official to whom is entrusted the responsibility of compelling a State-made corporation to fulfill its charter obligations. He is not a subscriber to Blue Cross,

frustrated by its failure to contract with plaintiff. He is not a competitor in the business of offering hospitalization insurance, inhibited because of any monopolistic practices on defendant's part.

In other words, plaintiff is not within the class of persons for whose benefit defendant was incorporated and, therefore, he has no standing to question defendant's monopolistic practices: National Accident & Insurance Co. v. Workmen's Circle, 289 Pa. 164, 168. This act was passed either for the benefit of nonprofit hospitalization insurance plans or for the benefit of the members of such plans, or for both, since they are essentially identical. Plaintiff is not in either class and although defendant's policy in defining "approved hospital" may hurt him as a hospital owner, plaintiff has no standing to complain, because the act was not passed for the benefit of hospital owners.

The broadening of the right of third parties to bring suit on contracts to which they are not privy, inaugurated in Commonwealth ex rel. Schnader v. Great American Indemnity Co., 312 Pa. 183, 192, and more recently expressed in Keefer v. Lombardi, 376 Pa. 367, 372, has not included a party in plaintiff's position. The Supreme Court of Pennsylvania has adopted as the law of Pennsylvania, sections 133, 135, 139 and 345 of A. L. I. Restatement of the Law of Contracts. Without elaboration it may be stated that plaintiff obviously does not come within any class of third parties mentioned in these rules.

Although the certificate holder might have anticipated that plaintiff was to be a beneficiary of the contract, and there is no reason to believe that he did, surely Blue Cross did not so intend. See Spires v. Hanover Fire Insurance Co., 364 Pa. 52, 56. If plaintiff is suing on the contract, he is bound by it and he is clearly excluded from its operation: Miller

696

v. Johnstown Traction Co., 167 Pa. Superior Ct. 421, 427.

If plaintiff is not suing on the contract, but asks us to compel defendant to contract with him, we could not so order, for that would involve our writing the contract between the parties. The law (section 4 of the act, 15 PS §2851-1304) has reposed that power in the insurance department and not with this court. Any dispute as to the reasonableness of any contract is to be resolved not by us but by appeal to the Court of Common Pleas of Dauphin County.

The insurance department is not given the broad directory powers granted the health department under section 16 of the Nonprofit Medical and Dental Service Corporation Act of June 27, 1939, P. L. 1125, as amended May 12, 1949, P. L. 1261, 15 PS §2851-1516, to determine whether it is properly performing its corporate functions. Nevertheless, it does have supervisory power over rates, certificates, reserves and contracts. Any order of ours compelling defendant to provide hospitalization at plaintiff's dental hospital would affect all of those areas committed by the legislature to the insurance department, with eventual appeal to another court, that of Dauphin County.

Under these circumstances, we are convinced that we cannot afford plaintiff the relief he seeks.

Now, January 20, 1958, defendant's demurrer is sustained and it is ordered and decreed that plaintiff's complaint be dismissed.

*Final Judgment Verbatim*

Now, January 20, 1958, defendant's demurrer is sustained and it is ordered and decreed that plaintiff's complaint be dismissed.