Philadelphia Electric Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued Sepetember 13, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Thomas P. Gadsden,* with him *Robert H. Young* and *Mark J. Kropilak, Morgan, Lewis & Bockius,* of counsel: *Edward G. Bauer, Jr.,* Vice President & General Counsel, and *Irene A. McKenna,* for petitioner.

*Marlane R. Chestnut,* Assistant Counsel, with her *Albert W. Johnson, III,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, January 10, 1984:

The Philadelphia Electric Company (PECO) has petitioned this Court for review of a June 25, 1982 order of the Pennsylvania Public Utility Commission (PUC) which required PECO to impose a surcharge on all of its residential customers using PECO's gas for outdoor lights.

On September 28, 1981, PECO filed Supplement No. 21 to Tariff Gas-PA. PUC No. 24 seeking to increase its rates effective November 27, 1981. By an order adopted November 25, 1981 and entered December 8, 1981, the PUC instituted an investigation to determine the lawfulness, justness and reasonableness of the proposed rates, thereby suspending Supplement

No. 21 until June 27, 1982 in accordance with the provisions of Section 1308(d) of the Public Utility Code, Act of July 1, 1978, P.L. 598, 66 Pa. C. S. §101.

Subsequently, twelve days of evidentiary hearings were held between December 22, 1981 and March 3, 1982. During this period, the PUC's prosecutory staff recommended that a significant annual surcharge be imposed on all of PECO's residential customers using outdoor gas lights. On April 29, 1982, the Administrative Law Judge presiding over the hearings issued a recommended decision which, *inter alia,* rejected the prosecutory staff's recommendation of a surcharge for outdoor gas lighting. Exceptions were filed by various parties, including the prosecutory staff which specifically excepted to the rejection of the outdoor gas lighting pricing scheme. On June 25, 1982, the PUC entered an order which, *inter alia,* adopted the prosecutory staff's recommended surcharge for outdoor gas lights. PECO subsequently petitioned the Court for review of the PUC's order.[1]

In this case, PECO argues that the questioned surcharge is unlawfully discriminatory as it charges residential customers receiving the same service under similar circumstances different rates solely on the basis of the customers ultimate use of the gas purchased from PECO. Furthermore, PECO argues that the PUC abused its discretion in requiring PECO to adopt a pricing scheme that is too costly to administer on an equitable basis. For the reasons that follow, we believe PECO's arguments are unpersuasive. The PUC's order, therefore, must be affirmed.

---

[1] In the June 25, 1982 order, the PUC approved rate increases which increased PECO's annual operating revenues by $31,460,000, thereby disallowing $7,277,000 of increased revenues sought by PECO. None of those findings are disputed in this proceeding; the only issue now presented is the propriety of the PUC's determination concerning the outdoor gas lighting surcharge.

This Court's standard of review from orders of the PUC setting rate structure is a limited one. The Administrative Agency Law[2] provides:

> The court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of appellant, or is not in accordance with law, . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

As we stated in *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 512, 533, 409 A.2d 446, 456 (1979), ". . . the establishment of a rate structure is an administrative function peculiarly within the expertise of the [PUC]." As the Supreme Court has explained, ". . . the power to fix 'just and reasonable' rates imports a flexibility in the exercise of a complicated regulatory function by a specialized decision-making body . . ." *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.,* 492 Pa. 326, 337, 424 A.2d 1213, 1219 (1980), *cert. denied* 454 U.S. 824 (1981). Thus, if the PUC's findings are supported by substantial evidence, which has been defined as, ". . . that quantum of evidence which a reasonable mind might accept to support a conclusion," *Norfolk and Western Railway v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 128, 413 A.2d 1037, 1047 (1980), this Court has no choice but to affirm. As the Supreme Court has stated, "that the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A.2d 331, 334 (1954) (emphasis in original).

---

[2] Act of April 28, 1978, P.L. 202, 2 Pa. C. S. §704.

The PUC candidly admits that the surcharge in question of approximately $132 per year for users of outdoor gas lights is intended to act as an incentive for those customers to curtail such a use. Recognizing that the supply of natural gas is not unlimited, the PUC imposed the surcharge because (1) natural gas is a relatively inefficient fuel for lighting purposes; (2) gas lights operate twenty-four hours a day; (3) electricity, which can easily be controlled, is much more efficient for lighting; and (4) the cost of existing gas supplies is increasing and the cost of new gas supplies is even higher. (P. 41 of the PUC's 62582 Opinion.) None of these findings are challenged by PECO, since all are supported by substantial evidence adduced at the evidentiary hearings. In response to PECO's argument that the policy would be too costly to administer on an equitable basis because customers could turn the gas light on without notifying PECO, the PUC noted its own regulations which require gas utilities to (1) annually inventory the number of outdoor gas light users; (2) provide free termination services; (3) notify customers twice a year of this free service; and (4) provide to those customers who will discontinue such use information concerning methods to convert or eliminate outdoor gas lights. 52 Pa. Code §59.62. The PUC found that PECO's compliance with these regulations, which are mandatory whether or not the surcharge had been imposed, would allow PECO to administer the program without significant additional costs. Again, we are unable to say that these findings are not supported by substantial evidence.

PECO argues that the imposition of the surcharge unlawfully discriminates against those residential gas consumers who use outdoor gas lights, thus making the pricing scheme contrary to law. Section 1304 of the Public Utility Code provides:

> No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person . . . or subject any person . . . to any *unreasonable* prejudice or disadvantage. No public utility shall establish or maintain any *unreasonable* difference as to rates . . . as between classes of service . . . this section does not prohibit the establishment of *reasonable* . . . classifications of rates . . . (emphasis added).

66 Pa. C. S. §1304. It must first be noted that not all differences in rates are discriminatory and, therefore, unlawful. Only unreasonable differences are prohibited. More importantly:

> Before a rate can be declared unduly preferential and therefore unlawful, it is essential that there be not only an advantage to one, but a resulting injury to another. Such an injury may arise from collecting from one more than a reasonable rate to him in order to make up for inadequate rates charged to another, or because of a lower rate to one of two patrons who are competitors in business. There must be an advantage to one at the expense of the other.

*Alpha Portland Cement Co. v. Public Service Commission,* 84 Pa. Superior Ct. 255 (1925). *Accord Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). Further, the complainant has the burden of proving that the rates in question are discriminatory. *Philadelphia Suburban Transit Co. v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 184, 281 A.2d 179 (1971), quoting *Carpenter v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 447, 15 A.2d 473 (1940). Finally,

the determination of whether a classification is reasonable is a question of fact for the PUC. *Philadelphia Suburban Transit; Deitch Co. v. Pennsylvania Public Utility Commission,* 204 Pa. Superior Ct. 102, 203 A.2d 515 (1964).

PECO claims that a difference in rates for residential customers is discriminatory and unreasonable when it is based solely on the end use of the product where the utility's cost of the product is identical, citing *Bailey v. Fayette Gas Fuel Co.,* 193 Pa. 175 (1899). There, the supplier attempted to charge $.25/1000 cubic feet of gas used for heating purposes while setting the price of gas used for lighting purposes at $1.50/1000 cubic feet. The company attempted to justify the difference in rates by showing it would cost a customer much more to purchase an alternative fuel source to provide comparable light than it would for comparable heat. The court held this was an impermissible basis of discrimination. However, in *United States Steel Co. v. Pennsylvania Public Utility Commission,* 37 Pa. Commonwealth Ct. 195, 209, 390 A.2d 849, 856 (1978), we stated, "costs of alternative fuels may be considered, along with other factors, in determining the reasonableness of a rate structure." *See Pittsburgh v. Pennsylvania Public Utility Commission,* 182 Pa. Superior Ct. 376, 392-95, 126 A.2d 777, 785 (1956). We, therefore, believe that whatever support *Bailey* may have provided for PECO's argument is now seriously in doubt.

In *Westerhoff Brothers v. Ephrata Borough,* 283 Pa. 71, 128 A. 656 (1925), the utility supplied a 220-volt current for power to customers at a rate of four cents per kilowatt hour, while also supplying a 110-volt current for lighting purposes at ten cents per kilowatt hour. The consumer, having the capability to reduce the 220-volt current to 110-volts for lighting

purposes, sued and alleged the difference in rates was unreasoable and, therefore, unlawful. As the court stated:

> [w]here the cost of the product supplied is uniform, the corporation selling it cannot object to the use made of it by the consumers. *If, however, some consideration for the difference in the charge can be made apparent, or if* it can be shown there is a difference in the cost of supplying, or in keeping ready to do so, the contrary conclusion is reached. *Reasonable distinctions may be made, based on the kind of service demanded.* (Emphasis added.) (Citations omitted.)

*Id.* at 73-74, 128 A. at 657. Although the court upheld the difference in rates on the basis of differing costs in providing the service, the emphasized portion of the quoted language shows the court's recognition that factors other than cost must be considered. As we stated in *Philadelphia Suburban Transportation,* 3 Pa. Commonwealth Ct. at 196-97, 281 A.2d at 186:

> Differences in rates between classes of customers based on such criteria as the quantity of [the product] used, *the nature of the use, the pattern of the use, or based on differences of conditions of service,* or cost of service are not only permissible but often are desirable and even necessary to achieve reasonable efficiency and economy of operation. (Emphasis added.)

PECO's argument that differences in rates when based on customer use can be justified only on a cost basis is without merit.

More importantly, to prove unreasonable discrimination, PECO must show that the outdoor gas light users are paying an unreasonably high rate thereby giving an advantage to other residential customers

who are paying unreasonably low rates. The record contains no such attempted proof. In fact, PECO states, in its brief, that outdoor gas light use consumes less than 1% of the synthetic natural gas purchased by PECO for a one year period. Such a representation belies any argument that the surcharge allows residential consumers without gas lights to pay unreasonably low rates. PECO, therefore, has simply failed to meet its burden of proving discrimination.

Finally PECO argues that the PUC's method of determining the amount of the surcharge is not supported by substantial evidence. The PUC found that the surcharge should be computed by using the cost of the most expensive gas purchased by PECO. PECO argues from this finding that there is no showing by the PUC that only this most expensive gas is used for outdoor lighting. Again, however, numerous factors other than cost of service may be considered in setting rates, a decision within the expertise of the PUC. *Zucker v. Pennsylvania Public Utility Commission,* 43 Pa. Commonwealth Ct. 207, 401 A.2d 1377 (1979).

In summation, the PUC has, for the reasons already stated, placed outdoor gas light residential users in a special class for rate purposes. This reasonable determination, which is supported by substantial evidence, cannot be disturbed by this Court. The same holds true for the PUC's determinations concerning the amount of the surcharge and the cost of administering the program. As PECO has failed to show any unlawful discrimination, we affirm the order of the PUC.

### ORDER

AND Now, January 10, 1984, the June 25, 1982, order of the PUC at Docket No. R-811719 is affirmed.

454

President Judge CRUMLISH, Judge WILLIAMS, and Judge MacPHAIL dissent.