106 Pa. Commonwealth Ct. 437 (1987)
526 A.2d 1243
City of Pittsburgh, Petitioner
v.
Pennsylvania Public Utility Commission, Respondent.
No. 496 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued March 25, 1987.
June 5, 1987.
*438 Argued March 25, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
*439 Ashley C. Schannauer, Assistant City Solicitor, with him, D. R. Pellegrini, City Solicitor, for petitioner.
Frank B. Wilmarth, Assistant Counsel, with him, Daniel P. Delaney, Chief Counsel, for respondent.
Thomas P. Gadsden, with him, Anthony C. DeCusatis, Alan L. Reed, for intervenor, Western Pennsylvania Water Company.
OPINION BY JUDGE CRAIG, June 5, 1987:
The Pennsylvania Public Utility Commission, by its order of January 29, 1986, (1) granted an increase in the annual revenues of the Western Pennsylvania Water Company amounting to $6,148,976 for the proposed Western Region and $110,252 for the Warren District, and (2) accepted a recommendation of the Administrative Law Judge (ALJ) to adopt a stipulation between the water company and trial staff which, among other things, permitted the water company to reduce from six to two its number of separate districts for ratemaking purposes. The City of Pittsburgh has appealed. The water company is an intervenor.
*440 On April 30, 1985, the water company filed tariff revisions designed to produce an overall increase in annual operating revenues of $9,028,877. The commission timely suspended the proposed rates until January 29, 1986, and instituted an investigation as to their lawfulness. The commission consolidated its investigation proceedings with the complaint proceedings which the city had instituted on June 12, 1985, alleging that the water company's proposal violated sections 1301 and 1304 of the Public Utility Code, 66 Pa. C. S. §§1301, 1304, which require that the rates be just and reasonable, and that the rates not be unreasonably discriminatory either as between localities or customer classes.
On December 18, 1985, the ALJ issued a recommended decision proposing an increase for the Western Region of $5,950,389, and an increase for the Warren District of $109,951. The ALJ also recommended that the commission approve the stipulation which permitted the company to consolidate its six districts into two districts, conditioned on the requirement that the water company continue to maintain separate records for those former six districts.
On January 29, 1986, the commission issued its opinion and order approving, among other things, the ALJ's recommendation to adopt the stipulation regarding rate structure. However, the commission rejected the ALJ's recommendation that the water company continue to maintain records for the six former districts.
On appeal here, the city raises the following four issues: (1) whether substantial evidence supports the reasonableness of the water company's allocation of revenue requirement among its operating districts; (2) whether the commission erred in failing to address the allocation of revenue requirement among customer classes, rendering the customer class allocation issue unreviewable; (3) whether substantial evidence supports *441 the reasonableness of the company's allocation of the revenue requirement among customer classes if the commission's decision is reviewable on that issue; and (4) whether the commission's rejection of the city's discovery request regarding per-district and per-customer class costs violated discovery rules.
Before addressing the merits of those issues, a brief explanation of the water company's ratemaking history with the commission is necessary.

Water Company's Ratemaking History
In 1972, sixteen separate corporations, all subsidiaries of American Water Works, Inc., merged to establish the Western Pennsylvania Water Company. After those mergers, the water company continued to maintain separate districts, corresponding to the former separate corporations. Initially, the company treated each district separately for ratemaking purposes. Consequently, each district had its own tariff and separately determined rates.
In its 1973 rate case, the commission approved the water company's consolidation of its Pittsburgh and Valley districts. Pennsylvania Public Utility Commission v. Western Pennsylvania Water Co., 49 Pa. PUC 18 (1975). In declining to approve various district consolidations as the water company then proposed, the commission acknowledged that the consolidation and the establishment of uniform rates could be justifiable at a future date, and that the water company could attempt to achieve rate parity for those districts on a gradual basis through future rate filings.
In its 1978 rate case, the water company proposed consolidation of the Monongahela district with the previously consolidated Pittsburgh-Valley district, establishing a single schedule of uniform rates. Although the city opposed that consolidation, asserting cost-of-service *442 differences, the commission approved the company's consolidation proposal. Pennsylvania Public Utility Commission v. Western Pennsylvania Water Co., 28 PUR 4th 89 (1979).
In its 1980 rate case, the commission approved a settlement between the trial staff and the water company which provided, among other things, the consolidation of the Washington and the Pittsburgh-Valley-Monongahela districts, to be known as the Pittsburgh Suburban District, and established the service territory of the former Washington district as a separate rate zone within the Pittsburgh Suburban district.
In its 1983 rate case, the water company proposed consolidation of all of its districts for ratemaking purposes on a gradual basis over a number of years, resulting in a single tariff and one schedule of rates for the water company's entire service territory. That concept is known as single tariff pricing. Although the commission did not agree to total consolidation, it did approve consolidation, for ratemaking purposes, of the Pittsburgh Suburban, Kittanning, McDonald, New Castle and Uniontown districts. Additionally, the commission approved the consolidation of the Indiana and Kane districts and the Clarion and Punxsutawney districts.
In its 1984 rate case, the water company proposed consolidation of the Ellwood district with the Pittsburgh Suburban-Kittanning-McDonald-New Castle-Uniontown district, to be known as the Western Region. The commission approved that consolidation with the exception that the Ellwood district remain a separate rate zone within the western region. Pennsylvania Public Utility Commission v. Western Pennsylvania Water Co., Docket No. R-842621 (January 28, 1985).
As a result of that January, 1985 order, the water company had reduced its total number of districts to six. Now, further consolidation of those six districts to two is the subject of this appeal.
*443 Turning to the four issues presented here, we note that, in rate cases, this court's scope of review is limited to a determination of whether the commission violated constitutional rights, committed an error of law, or made findings which are not supported by substantial evidence. Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 83 Pa. Commonwealth Ct. 331, 478 A.2d 921 (1984).

Reasonableness of the Allocation of Revenue Requirement among Operating Districts
Section 1301 of the Public Utility Code requires that "[e]very rate made, demanded or received by any public utility ... be just and reasonable. . . ." There are two steps in determining just and reasonable rates. First, there must be a determination as to the allowable increase in operating revenues. Second, that increase in operating revenues must be allocated among customer classes. On appeal here, the city is not challenging the commission's determination of the water company's overall revenue increase. Rather, the city challenges the commission's approval of the rate structure set forth in the stipulation between the trial staff and the water company.
The establishment of a rate structure is an administrative function peculiarly within the expertise of the commission. Philadelphia Electric Co. v. Pennsylvania Public Utility Commission, 79 Pa. Commonwealth Ct. 445, 470 A.2d 654 (1984). If the commission's findings are supported by substantial evidence, this court has no choice but to affirm. Philadelphia Electric at 448, 470 A.2d at 656.
The thrust of the city's position throughout this appeal is that the cost of serving customers within the city is less because of the city's higher customer density, and therefore, uniform rates throughout the water company's *444 service territory would unfairly discriminate against customers in the city. However, the city has pursued adjudication of that issue in the past. In 1957, when the South Pittsburgh Water Company proposed a gradual rate increase within the city in order to bring rates charged to city customers toward parity with the rates charged to all other customers, the city appealed the commission's approval of gradual rate parity. On appeal before the Superior Court, which then had jurisdiction over commission appeals, the Superior Court addressed the city's "cost of service based on density" argument and stated that:
Were it to grant a preference to one group because of relative proximity and density, the commission would have to grant the same preference to other groups similarly situated. Relative cost between areas alone is not controlling. . . . If area classifications were determined by cost of service studies, such could produce an infinite number of rate zones, and in the instant case, such assumption alone could create rate zones within the city area served depending on proximity to the source of supply of water.
Pittsburgh v. Pennsylvania Public Utility Commission, 185 Pa. Superior Ct. 460, 465-467, 137 A.2d 914, 917 (1958).
Here, the city again emphasizes the cost-of-service factor to the exclusion of other factors relevant to the establishment of a reasonable rate structure. Pennsylvania courts have repeatedly held that factors other than the cost of providing service must be considered in determining a rate structure. This court has recognized other relevant factors to include the recent and past rate history of the utility, the practicality of administering the rate schedules, and the value of the service. Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission, *445 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979).
The commission's opinion adopting the parties' stipulation as to rate structure addresses factors, other than the cost of service, which the commission considered in approving the stipulated rate structure. Specifically, the commission acknowledged that the stipulation was "a meaningful step toward the eventual establishment of uniform rates for all of WPW, while assuring that movement toward that goal occurs on a gradual basis with adequate opportunity for further Commission review. . . ." Additionally, the commission noted that the "stipulation avoids unnecessary expenditure of time and expense . . . by recognizing the essential similarity of the Company and Trial Staff's rate structure and rate design proposals. . . ."
Although the city challenges the commission's indication in its findings of fact that the establishment of uniform rates for the water company's entire service territory is a reasonable goal, its argument that substantial evidence does not support the reasonableness of that goal must fail. Given the history of the gradual and continuing consolidation of the water company, we hold that the commission is not obliged to repeatedly explain and justify its approval of the goal of single tariff pricing which the commission has been allowing the water company to implement gradually since the late 1950's.
Additionally, the city argues that the commission's approved rate structure is discriminatory because it permits improper subsidization.
To prove unreasonable discrimination, the city must show that certain customers "are paying an unreasonably high rate thereby giving an advantage to other residential customers who are paying unreasonably low rates." Philadelphia Electric Co. at 452-53, 470 A.2d at 658. However, because the difference between the commission's approved rates and the city's proposed *446 rates, for an average residential customer, results in a $1.84 per year difference, the commission found that difference to be de minimis and correctly concluded that the city failed to meet its burden of proving discrimination.
Finally, we must note that the water company did not propose single tariff pricing throughout its entire service territory in this rate proceeding. Moreover, even though the Butler, Clarion-Punxsutawney, Connellsville and Indiana-Kane districts were consolidated with the Western Region for ratemaking purposes in this rate proceeding, those districts will remain as separate "rate zones." Consequently, the rates of those zones are not uniform with those of the remainder of the Western Region, but instead continue to reflect substantial cost-of-service differences. As noted in the water company's brief, the Butler and the Clarion-Punxsutawney rate zones have the highest rates in the Western Region, thus reflecting recognition of cost-of-service differences among the districts and rate zones.
Accordingly, we find that substantial evidence supports the reasonableness of the allocation of revenue requirement among operating districts and that those rates do not permit improper subsidization.

Reviewability of Allocation of Revenue Requirement Among Customer Classes
The city contends that the commission failed to make necessary findings of fact regarding the reasonableness of the company's inter-customer class allocations of revenue, as required by section 703(e) of the Public Utility Code, 66 Pa. C. S. §703(e).
The water company and the city litigated the issue of inter-customer-class revenue allocations. The city's argument regarding inter-customer-class rate design is similar to its argument regarding inter-district rate *447 structure  emphasizing the cost of providing service to the exclusion of all other relevant factors.
Section 703(e) of the Public Utility Code requires that the commission's "findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." This court has repeatedly held that the absence of formal findings will not necessarily preclude review. Mobilfone of Northeastern Pennsylvania, Inc. v. Pennsylvania Public Utility Commission, 73 Pa. Commonwealth Ct. 340, 458 A.2d 1030 (1983). Additionally, as this court recently stated in Barasch v. Pennsylvania Public Utility Commission, 101 Pa. Commonwealth Ct. 76, 84, 515 A.2d 651, 655 (1986):
We have held that a Commission decision is adequate where, on each of the issues raised, the Commission was merely presented with a choice of actions, each fully developed in the record, and its choice on each issue amounted to an implicit acceptance of one party's thesis and the rejection of the other party's contention.
The record in this proceeding contains the parties' positions regarding the company's inter-customer-class allocations of revenues.
In its order, the commission specifically rejected the city's position to adhere strictly and solely to cost-of-service principles. Because the city made the same argument regarding inter-class revenue allocations as it did regarding inter-district revenue allocations, this court has no difficulty in discerning the essential facts on which the commission based its decision regarding inter-customer-class revenue allocations. Accordingly, we conclude that the commission's decision regarding the issue of inter-customer-class revenue allocations is reviewable.

*448 Reasonableness of the Company's Allocation of Revenue Requirement Among Customer Classes

The city asserts that the reasonableness of the stipulation's inter-customer-class allocation of revenues lacks the necessary support of substantial evidence. Specifically, the city challenges the company's customer class demand ratios which it derived through the application of the base-extra demand method of allocation. That method allocates revenues based upon the maximum water consumption of each customer class per hour and day of any year.
The base-extra demand method of allocation separates all costs of providing general water service into three categories  customer costs, base costs and extra-demand costs. Customer costs are costs incurred regardless of the amount of water used, including items such as the expenses of meter reading, billing and customer accounting, as well as other fixed costs relating to meters and service. Base costs include all costs associated with serving customers, and those costs are allocated in accordance with the annual consumption of each class of customers. Extra-demand costs are the costs associated with meeting rate-of-use requirements in excess of average usage, as measured by maximum-day extra demand and maximum-hour extra demand.
The city challenges the water company's reliance upon demand data and cost allocation ratios from service territories of other water companies. Additionally, the city criticizes the reliability of that data because there is no indication whether the ratios were based upon actual measured data. However, although the city emphasizes the value of actual measured data, it concedes that actual data for class demand ratio could only be determined if each and every customer had a recording demand meter to provide daily and hourly demand data, or by *449 reading all customers' meters at exactly the same time every hour of every day over an entire year.
Of course, a water company could not be expected to use such an onerous method of collecting actual data. Instead, the company's expert witness reviewed data from a number of different sources in determining its customer demand ratios. Those various sources of data included: metered demand data of one of its large industrial customers as an indication of industrial class demands; metered demand data from another water company; a Johns Hopkins University research team study of residential and commercial customers; and demand ratios which the water company used in earlier studies with the approval of the trial staff and the commission.
The city's witness testified that the actual range of possible variation and demand factors was greater than the range indicated in the company's data. That witness submitted demand ratios which another engineering firm had used to perform cost-of-service studies for other various water systems. However, as noted in the water company's brief, that witness was not associated with that engineering firm and merely took that exhibit from the record of another case.
Also, as noted in the water company's brief, the city criticizes the water company's demand ratios but did not submit any alternatives to the commission. This court has held that there is no set formula for determining proper ratios among the rates of different customer classes. Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission, 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). The record contains a multitude of evidence to support the city's base-extra demand ratio allocation method, and the city concedes that "the demand data of the other companies constitutes legitimate evidence, albeit weak, which the Commission in its discretion *450 might deem sufficient to support the reasonableness of the inter-customer class allocations." Accordingly, we must find that substantial evidence supports the stipulation's inter-customer-class allocations, and that the city has failed to demonstrate that the implementation of the stipulation's method of allocation leads to "clearly arbitrary results." Barasch v. Pennsylvania Public Utility Commission, 507 Pa. 496, 520-21, 491 A.2d 94, 106-07 (1985).

The Commission's Rejection of the City's Discovery Request
The commission's regulation regarding discovery requests allows a broad scope of discovery. However, section 5.361 of 52 Pa. Code limits that scope of discovery, prohibiting, among other things, discovery which would cause an unreasonable burden, expense or investigation by a participant. Further, subsection (b) of 52 Pa. Code §5.361 provides the following further limitations:
In rate proceedings, discovery shall not be limited under subsection (a) solely because the discovery request requires the compilation of data or information which the answering participant does not maintain in the format requested, in the normal course of business, or because the discovery request requires that the answering participant make a special study or analysis, if the study or analysis cannot reasonably be conducted by the participant making the request.

(Emphasis added.)
The city had made a discovery request seeking the production of cost-of-service data for the individual districts proposed for consolidation, for the component districts of the districts proposed for consolidation and for the customer classes of the water company as a whole *451 and per district. The water company objected to those requests, and the city responded with a motion to dismiss. The ALJ issued an interim order which required only that the water company respond with data which was available as of the date of the interim order, and that the water company need not perform additional analyses or studies.
In response to that first interim order, the city filed a motion for reconsideration and a petition for certification which requested the ALJ to certify the discovery issue for interlocutory review. In denying both requests, the ALJ reasoned in his second interim order that the city was financially and technically capable of performing the requested studies. The commission affirmed those rulings.
The water company complied with the ALJ's discovery order and provided studies that attempted to develop the revenue requirement of each of the districts. As noted in the water company's brief, the city's witness conceded that those revenue requirement studies were sufficient to assess whether inter-district revenue allocations were cost based. Accordingly, we conclude that the commission did not abuse its discretion by limiting the city's discovery request.

Summary
Substantial evidence supports the commission's approval of the stipulation between trial staff and the water company pertaining to the reasonableness of the company's allocation of revenue requirement among its operating districts and its customer classes. Additionally, we conclude that the commission's rejection of the city's discovery request regarding per-district and per-customer class costs did not violate discovery rules.
Accordingly, we affirm.

*452 ORDER
NOW, June 5, 1987, the order of the Pennsylvania Public Utility Commission in Pennsylvania Public Utility Commission v. Western Pennsylvania Water Co., at R-850096 through R-850096C002 and R-850097, dated January 29, 1986, is affirmed.